**Paul Ziah DALLO, Petitioner, Petitioner-Appellant,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent, Respondent-Appellee.**

Nos. 84–3393, 85–1033 and 85–3092.

United States Court of Appeals, Sixth Circuit.

Argued May 9, 1985.

Decided June 20, 1985.

Fakhri W. Yono, argued, Yono & Sarafa, P.C., Southfield, Mich., William M. Hatchett, argued, Pontiac, Mich., for P. Dallo.

Robert Kendall, Jr. (LC), argued, Office of Immigration Litigation, Crim. Div., Washington, D.C., Thomas W. Hussey, Christopher Barnes, U.S. Atty., Nicholas J. Pantel, Cincinnati, Ohio, L. Michael Wicks, argued, Asst. U.S. Atty., Detroit, Mich., for I.N.S.

Before ENGEL and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

These three consolidated matters all relate to Paul Ziah Dallo's continuing efforts to resist deportation. Nos. 84–3393 and 85–3092 challenge the Board of Immigration Appeals' refusals to reopen deportation proceedings, and No. 85–1033 is an appeal from a district court's denial of his petition for habeas corpus. We affirm in all three cases.

### Facts

Dallo is a native and citizen of Iraq who entered the United States on November 9, 1977, as an immigrant. His immigrant visa was approved on September 19, 1977, based on his marriage to United States citizen Judy Henry on September 8, 1977, at Windsor, Canada. That marriage was terminated by divorce on July 13, 1978.

On November 14, 1979, an investigator for the Immigration and Naturalization Service contacted Judy Henry, and she told the investigator that the marriage was a fraudulent one arranged for immigration purposes. After notice of her rights and in the presence of the investigator, she wrote out and signed the affidavit set out in the footnote.[1] Parallel investigations of the

1. My full true and correct name is Judy Lucille Henry. I am a citizen of the United States by my birth in Hamtramck, Michigan on September 25, 1956. I was first introduced to Mr. Dallo by a mutual friend who told me that Dallo was in Canada and wanted to get married so he could come to the United States. After about 2–3 months I finally married Paul Dallo in Windsor Ontario Canada on September 8, 1977. On the day of our marriage Paul gave me $250.00. He returned to his residence and I returned to the home of my parents on 28458 Park Court in Madison Heights, Michigan. There was another man, about 30 plus years old, about 160, short, and thin hair, who was at the marriage who brought me back home. This same man took me to the immigration office when I made the papers for Paul. I put on that paper that I lived at an address on Joseph Street in Utica and I also said that Paul would be living there when he came to the United States. I never lived on Joseph Street; I have never lived as man and wife with Paul H. Dallo and there was never any intent that I should. I did not see the man I married after our marriage until about a month after he arrived in the United States, and that was only for a few hours. Paul later came to me and told me that I could now get the divorce, and that it had all been arranged if I went to this particular attorney in Southfield. At the time of the divorce Paul gave me another $250.00. He had given me about $50.00 over a period of time between our marriage and the divorce. I will present to the immigration service those copies of divorce papers to testify as to the date of divorce and to name the attorney who handled the case—I cannot remember either fact. I have never lived with Paul H. Dallo and he has never lived with me. There was never any intent on the part of either of us to have a normal working marriage. Our marriage was to help Paul to get into the United States. If it becomes necessary for me to appear in any proceedings I shall do so voluntarily. I understand now that this marriage

marriages of Dallo's brothers, Vadi Zia Jajou and Khalid Zia Jajo, produced affidavits from United States citizens Patricia Ann Crombez and Esther Diaz (neé Jaime) saying that the marriages were also fraudulent ones. Patricia Crombez stated in a sworn affidavit, dated November 14, 1979, that Dallo persuaded her to travel to Cairo, Egypt, and marry Vadi Zia Jajou on August 20, 1979. She stated that Dallo paid her a total of $400 to enter an unconsummated marriage to a man she had never met. Esther Diaz stated in a sworn affidavit dated November 20, 1979, that Dallo paid her $300 to marry Khalid Zia Jajo in Cairo on August 20, 1979, although her marriage was initially arranged by a man she knew only as Billy. The United States Attorney declined prosecution of Dallo in favor of administrative action to deport him.

The INS then issued an Order to Show Cause and Notice of Hearing to Dallo on January 24, 1980. The notice alleged four bases for deportability, all essentially flowing from his fraud.[2] The deportation hearing commenced on February 21, 1980, but was not completed until July 20, 1981. The INS trial attorney moved the admittance into evidence of various documents, including Judy Henry's affidavit; Dallo's counsel stipulated to the admission of the affidavit, but reserved his right to cross-examine the witness.

After learning of petitioner's desire to cross-examine Judy Henry and before the ultimate completion of the hearing, the INS attempted to subpoena Judy Henry for testimony. A subpoena dated March 19, 1980, was returned by the Postal Service stamped "return to sender, moved not forwardable." An investigator then visited Judy Henry's parents' home, and they told him that they did not know her location, as she traveled throughout the United States in her work, but they were in occasional telephonic contact with her. They accepted a subpoena for her and promised to tell her about it when she next called. At the hearing on April 17, 1980, however, the immigration judge telephoned the Henrys and they said they had not been in touch with their daughter since the investigator's visit. A third subpoena was served on June 11, 1981, to no avail. At the June 17, 1981, hearing, Dallo's trial counsel had no suggestions as to how Judy Henry could be located. Dallo himself, when asked by an investigator prior to the hearing where his

---

has caused some problems and that by doing it I may have violated some law, but I did not understand that at the time.

**2.** [I]t is charged that you are subject to deportation pursuant to the following provision(s) of law:
Sections 241(a)(2) and 241(c) of the Immigration and Nationality Act [8 U.S.C. § 1251(a)(2), (c) ], in that you are in the United States in violation thereof because you are an alien who entered in violation of Section 212(a)(19) [8 U.S.C. § 1182(a)(19) ] with an immigrant visa or other documentation which was procured by fraud on the basis of a marriage entered into less than 2 years prior to such entry, which marriage was judicially annulled or terminated within 2 years subsequent to any entry.
Sections 241(a)(2) and 241(c) of the Immigration and Nationality Act, in that you are in the United States in violation thereof because you are an alien who entered in violation of Section 212(a)(19) with an immigrant visa or other documentation which was procured by fraud, it appearing to the satisfaction of the Attorney General that you have failed or re-

fused to fulfill your marital agreement which in the opinion of the Attorney General was made for the purpose of procuring your entry as an immigrant.
Section 241(a)(1) of the Immigration and Nationality Act [8 U.S.C. § 1251(a)(1) ] in that, at time of entry you were within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit, aliens who are immigrants not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document and not exempted from the possession thereof by said act or regulations made thereunder, under Section 212(a)(20) of the Act [8 U.S.C. § 1182(a)(20) ].
Section 241(a)(1) of the Immigration and Nationality Act, in that, at time of entry you were within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit, aliens who are seeking to enter for the purpose of performing skilled or unskilled labor and in whose cases the Secretary of Labor has not made the certification as provided by Section 212(a)(14) of the Act [8 U.S.C. § 1182(a)(14) ], as amended.

ex-wife could be located, refused to answer on advice of counsel. At no time did Dallo introduce any evidence to rebut Judy Henry's affidavit.

The immigration judge on November 20, 1981, issued a written decision ordering Dallo to voluntarily depart within thirty days, or alternatively to be deported to Iraq. The judge held that every effort possible had been made to locate the ex-wife for cross-examination and admitted her affidavit on the authority of 8 C.F.R. § 242.14(c). He found the marriage fraudulent, a finding based in part on the INS investigation, including Judy Henry's affidavit, and in part on the statutory presumption of fraud in section 241(c) of the Immigration and Nationality Act, 8 U.S.C. § 1251(c). He also denied a request for asylum, finding that Dallo had failed to establish the likelihood of persecution if he were returned to Iraq.[3] Dallo timely appealed to the Board of Immigration Appeals, which on May 9, 1983, sustained the order that Dallo depart the United States voluntarily within thirty days in lieu of enforced deportation.

Dallo did not seek judicial review of the Board's order within the six months provided by section 106(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a)(1), nor did he voluntarily depart the United States. The INS issued a Warrant of Deportation for Dallo on August 29, 1983. Petitioner applied for a stay of deportation on October 3, 1983; the application was denied on March 8, 1984, and he was ordered to report for deportation on March 15, 1984. When he failed to appear as ordered, a second notice to report was sent to him and his counsel, ordering him to report for deportation on March 29, 1984. He again failed to report as ordered, and on April 3, 1984, INS officers took him into custody, where he remains.

Dallo's counsel on April 4, 1984, telephonically requested the Eoard of Immigration Appeals to reconsider its decision. The Board denied this request without opinion on May 10, 1984.

On April 6, 1984, Dallo's counsel mailed a petition to review the Board's May 9, 1983, order to this Court with a motion to file the petition out of time. The petition and motion were received by the Clerk of Court on April 9, 1984, and the motion was denied and the case dismissed by a per curiam order on September 26, 1984. *Dallo v. INS*, No. 84–3280 (6th Cir. Sept. 26, 1984). This and the subsequent petitions to this Court have stayed the deportation until the present date, pursuant to section 106(a)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a)(3).

On April 20, 1984, Dallo's counsel filed a petition for a writ of habeas corpus, attacking the deportation, in the United States District Court for the Eastern District of Michigan. After a two-hour hearing on May 7, 1984, Judge Guy denied the writ in a bench opinion. *Dallo v. INS*, No. 84–CV1928–DT (E.D.Mich. filed May 11, 1984). Although the court did grant Dallo a four-day temporary restraining order to give him time to appeal, no appeal was ever taken, perhaps because jurisdiction was im-

---

**3.** The claim to asylum and for withholding of deportation was for the most part based on self-serving generalized statements. While it is true that in most instances the respondents are unable to present evidence other than these statements, it is to be noted that this respondent's claim rests primarily upon the premise that because he is a Chaldean Christian in a predominately Moslem country, dire consequences are certain to befall him. Yet, it is true that the respondent served and was honorably discharged from the Iraqi army. It is also a fact that all of the members of his family including his mother, father, and a sister reside in Iraq, with the exception of two brothers in Cairo, Egypt. It is also an established fact that he was out of Iraq to marry in Windsor, Canada on September 8, 1977, and made no claim to asylum while in that country. He also was in Cairo, Egypt prior to coming to the United States as an immigrant and the record establishes that he did not make a claim to asylum while in Cairo, Egypt. Paul Ziah Dallo, No. A–30 848 215, slip op. at 6 (Angelilli, Immigration J. Nov. 20, 1981). The immigration judge therefore held that Dallo had not met his burden of proof. *Id.* at 7; *see Dally v. INS*, 744 F.2d 1191 (6th Cir.1984). The asylum claim is not before this court.

properly premised on Immigration and Nationality Act § 106(b), 8 U.S.C. § 1105a(b).

On April 30, 1984, Dallo's counsel moved the Board of Immigration Appeals to reopen and reconsider the deportation proceedings pursuant to 8 C.F.R. §§ 103.5, 242.22. The Board denied the motion to reopen in a written opinion on May 16, 1984, which also included a more formal denial of the April 4 telephonic motion to reopen. Dallo on May 17, 1984, petitioned for review of this order to this Court, and it is No. 84–3393.

On May 21, 1984, Dallo's counsel filed a second petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. This petition sought his release on bond pending this court's disposition of No. 84–3393. Judge Joiner held in open count on May 25, 1984, that the District Director of the INS was within his discretion in denying bond, and a formal judgment and order denying the writ was entered on June 14, 1984. *Dallo v. INS, Detroit, Mich.,* No. 84–CV–7253–AA (E.D.Mich. filed June 14, 1984). No appeal was taken.

On May 31, 1984, six days after Judge Joiner's bench opinion and two weeks before it was filed, Dallo's local counsel filed a third petition for a writ of habeas corpus, this time in the United States District Court for the Western District of Texas. Dallo chose this district because he was then being held at the Alien Detention Facility in El Paso, Texas, to await deportation. He again attacked the legality of the deportation order and sought release on bond pending that court's disposition of his habeas petition. Judge Hudspeth denied the writ in a written opinion on July 20, 1984. *Dallo v. Giugni,* No. EP–84–CA–198 (W.D.Tex. July 20, 1984). No appeal was taken.

On August 21, 1984, Dallo's counsel for the third time moved the Board of Immigration Appeals to reopen and reconsider the deportation proceedings. He now alleged that he had married a lawful permanent resident of the United States on December 11, 1983, and thus was eligible for relief under section 241(f) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f). Dallo did not explain why this ground was not combined with the April 30 request to reopen. The Board denied the motion on January 4, 1985. Dallo on January 28, 1985, petitioned for review in this Court, and it is No. 85–3092.

On September 5, 1984, Dallo's counsel filed a fourth petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. This petition again sought Dallo's release on bond pending this court's disposition of his petitions for review. The case was referred to United States Magistrate Komives for a report and recommendation. Magistrate Komives on October 23, 1984, recommended that the petition be dismissed for want of jurisdiction, petitioner not being in the district but in the Western District of Texas, and alternatively that the writ be denied because the possibility of favorable action on Dallo's pending judicial proceedings "must be considered remote at best." In a written opinion, Judge Guy on December 12, 1984, agreed with the petitioner that he had jurisdiction, but declared that the likelihood of Dallo's success on the merits was too remote to justify a writ of habeas corpus. *Dallo v. INS,* No. 84–CV–4130–DT (E.D.Mich. Dec. 12, 1984). Dallo on January 4, 1985, appealed the denial to this court, No. 85–1033, and made an emergency motion for release pending appeal. That motion was denied by a motions panel of this Court on March 6, 1985, and the appeal was consolidated with the two remaining petitions for review of orders of the Board of Immigration Appeals.

Petitioner has also made a fourth application to the Board to reopen deportation proceedings, this one to apply for suspension of deportation pursuant to section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1). Ironically, that provision allows a suspension of deportation, in the discretion of the Attorney General, for aliens who, inter alia, have been physically present in the United States for at least seven years—a condition

Dallo can meet only because of his continued petitions to this court. The Board had not yet acted on this motion on the date of oral argument.

### Admission of the Henry Affidavit

■ In No. 84–3393, the petition to review the Board's May 16, 1984, refusal to reopen deportation proceedings, the only issue on review is whether the Board abused its discretion in denying the motion to reopen in the light of *Baliza v. INS,* 709 F.2d 1231 (9th Cir.1983). As the motion to reopen was made after it was too late to appeal the final order of deportation, we can review only whether the Board abused its discretion in failing to reopen and reconsider the appeal. *Perwolf v. INS,* 741 F.2d 1109, 1110 (8th Cir.1984); *LeBlanc v. INS,* 715 F.2d 685, 688–93 (1st Cir.1983); *Bae v. INS,* 706 F.2d 866, 869 (8th Cir.1983).

The Federal Rules of Evidence do not apply in immigration hearings. Instead, the regulations provide that "[t]he special inquiry officer may receive in evidence any oral or written statement which is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing, or trial." 8 C.F.R. § 242.-14(c). *Baliza* held that an out-of-court (hearsay) statement such as an affidavit must at least be shown to be authentic. 709 F.2d at 1234. It held in the alternative that the government cannot simply choose to use a hearsay statement without making a reasonable effort to locate the potential witness for cross-examination. *Id.; see* Immigration and Nationality Act § 242(b)(3), 8 U.S.C. § 1252(b)(3). *Baliza* recognized, however, that hearsay evidence is admissible whenever the government cannot locate the witness. 709 F.2d at 1234; *see de Hernandez v. INS,* 498 F.2d 919, 921 (9th Cir.1974) (per curiam); *Solis-Davila v. INS,* 456 F.2d 424, 426 (5th Cir.1972).

The Board held that this case is distinguishable from *Baliza* in that the government did make a reasonable effort to subpoena the witness for cross-examination. We agree with that conclusion, and it cannot by any stretch of the imagination be called an abuse of discretion. However, the refusal to reopen is correct for an additional reason. Dallo's marriage would have been found fraudulent even without his ex-wife's affidavit. He married Henry less than two years prior to his entry into the United States and the marriage was terminated less than two years after his entry. He was well within the statutory presumption of fraud in section 241(c) of the Immigration and Nationality Act, 8 U.S.C. § 1251(c), and he offered no evidence to rebut the presumption. The petition for review, therefore, is obviously without merit.

### The Section 241(f) Exception

■ In No. 85–3092, Dallo's petition for review of the Board's January 4, 1985, refusal to reopen proceedings, the only question is whether the Board abused its discretion in refusing to reconsider the deportation order in the light of section 241(f) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f). Section 241(f) formerly provided a nondiscretionary waiver for fraudulently admitted aliens who were closely related to United States citizens or permanent residents.[4] In 1981, section 241(f) was amended to read in relevant part as follows:

**(f) Discretion of Attorney General to waive deportation for fraudulent entry in specified cases**

(1)(A) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure or have procured visas or other documenta-

---

4. **Relationship to United States citizen or lawfully admitted alien as affecting deportation for fraudulent entry**

    (f) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have

sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

tion, or entry into the United States, by fraud or misrepresentation, whether willful or innocent, may, in the discretion of the Attorney General, be waived for any alien ... who—

(i) is the spouse, parent, or child of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence; and

(ii) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such entry except for those grounds of inadmissibility specified under paragraphs (14), (20), and (21) of section 1182(a) of this title which were a direct result of that fraud or misrepresentation.

(B) A waiver of deportation for fraud or misrepresentation granted under subparagraph (A) shall also operate to waive deportation based on the grounds of in-

admissibility at entry described under subparagraph (A)(ii) directly resulting from such fraud or misrepresentation.

Immigration and Nationality Act Amendments of 1981, Pub.L. No. 97–116, § 8, 95 Stat. 1611, 1616 (codified as 8 U.S.C. § 1251(f)(1)). The legislative history shows that a primary purpose of the amendment was to minimize litigation over the provision by placing a high level of discretionary authority in the Attorney General and his delegates.[5]

Dallo was married to Bushra Elais Schounia, a native of Iraq but presumably a permanent legal resident of the United States, on December 11, 1983.[6] The Board concedes that he made out a sufficient prima facie showing of eligibility for relief under section 241(f). However, as a matter of administrative discretion, the Board declined to reopen.[7]

5. The present law has been a major source of controversy and litigation for many years. Although the original intent of the section was simply to waive relatively minor grounds for deportation—those arising out of misrepresentations in arranging entry—for aliens with a close family relative who was a United States citizen or lawful permanent resident, the scope of the waiver and the meaning of "otherwise admissible" have become increasingly unclear. As early as 1973, in an Executive Communication enclosing a legislative proposal to clarify the section, the Department of Justice stated that "litigants have sought to expand section 241(f) into a charter of amnesty, waiving all restrictions for those who have entered the United States through fraud." Twice litigation involving the proper interpretation of that section has reached the Supreme Court with no clear resolution. Compare *INS v. Errico*, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966), with *Reid v. INS*, 420 U.S. 619, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975). In testimony before the Committee in 1979, Acting INS Commissioner Crosland concluded that "differing administrative and judicial interpretations have left the law in a state of confusion which makes it virtually impossible for the INS to uniformly administer section 241(f)."

The Committee amendment reconciles the confusing and conflicting judicial and administrative interpretations of the scope of this provision, and clarifies that the waiver is only intended to apply to immigrants and that it is available for innocent (as well as fraudulent) misrepresentations. By doing this and making the waiver discretionary, it should obviate

the need for further litigation, and promote the uniform administration of this section. H.R.Rep. No. 264, 97th Cong., 1st Sess. 25 (footnote omitted), *reprinted in* 1981 U.S.Code Cong. & Ad.News 2577, 2594.

6. Because this was a denial of a motion to reopen and no evidence was taken, the Board seems to have assumed the set of facts most favorable to petitioner, as upon motions for summary judgment. However, the Board was aware that Dallo's 1983 federal income tax return claimed single filing status.

7. [W]e find that the respondent's motion to reopen for 241(f) relief warrants denial as a matter of discretion. In this regard, neither the courts nor this Board have been lenient toward aliens who have flouted our immigration laws by engaging in fraudulent marriages to United States citizens or lawful permanent residents. Congress has emphatically expressed its disapproval of such conduct by the enactment of section 204(c) of the Act, 8 U.S.C. § 1154(c), which precludes from immediate relative or preference status any alien who has previously been accorded a nonquota or preference status on the basis of a marriage which has been determined to have been entered into for the purpose of evading the immigration laws. The purpose of section 241(f) is to aid in the unification of families, a goal which Congress has promoted through a number of provisions of the Act. However, it does not appear that Congress intended to extend the benefits to this humanitarian purpose to aliens who have attempted to evade

This Court in *Balani* established the rule that "[i]n determining whether the Board abused its discretion, this Court must decide whether the denial of Petitioner's motion to reopen deportation proceedings was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir.1982) (per curiam). Petitioner makes no claim that the Board's order rested on an impermissible basis such as invidious discrimination. Although he claims that *Da Lomba*, 16 I. & N. Dec. 616 (Bd. Immigration App.1978), represents an established policy from which the Board has inexplicably departed, it is obvious that the nondiscretionary provisions of prior law offer no guidance to the Board's current discretion.

We can only take petitioner's argument to be that the Board's explanation of its decision was not rational. That cannot be said to be the case. Dallo did not merely marry to evade the immigration laws, he did so in the most blatant fraudulent manner. Furthermore, he has conspired with others to create equally fraudulent marriages. His current marriage took place only after a final order of deportation took

effect against him, an indication that this marriage too may have been contracted to evade the immigration laws. It appears to be one in a long series of overt acts to evade and abuse the immigration laws. It is clear that if the unfavorable use of discretion were not appropriate in this case, there is virtually no case in which it would be appropriate. Dallo's claim has all the equity of one who has murdered his parents and asks for mercy because he is an orphan.

Dallo and his counsel must have been aware at all times that the Board's decision not to reopen the deportation proceedings in order to consider the effect of section 241(f) has the protection of not one but two "abuse of discretion" standards of review: The Board's decision whether to reopen is discretionary, and the Board's application of section 241(f) is discretionary. These two protections are in addition to the unusual degree of discretion given to the Board in immigration matters. *See INS v. Wang*, 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981); *Balani*, 669 F.2d at 1162. It is clear in the face of that discretion and Dallo's lack of equity that this petition for review is obviously without merit.[8]

the immigration laws through fraudulent marriages. In light of the provisions of section 204(c) denying immediate relative status to such persons, it would appear to be inconsistent with the Congressional purpose to grant 241(f) relief to any alien who has engaged in marriage fraud in order to gain immigration benefits. We note that the Board is not precluded from granting relief in such a case. However, in view of the egregious nature of the violation and the fact that Congress has denied preference status to aliens in similar circumstances who are outside the United States, it is reasonable to require that an alien who has entered the United States on the basis of a sham marriage must demonstrate substantial equities to warrant reopening of his deportation proceedings. Mere statutory qualification should not suffice. In the present case, we note that the Board entered a final administrative order of deportation on May 9, 1983. Respondent's second marriage in December 1983 occurred long after our final order. Respondent has repeatedly disregarded United States immigration laws to suit his own needs. He has overstayed a

grant of voluntary departure and failed to appear for two orders of deportation. At the midnight hour, respondent filed his third motion for relief from deportation. The equity of a marriage is accorded less weight where the marriage did not occur until long after the respondent has been found deportable. Finally, we note that the filing of respondent's motion on August 21, 1984, occurred long after the marriage and respondent's orders to report for deportation. Consequently, we find that the motion to reopen should be denied as a matter of discretion. Accordingly, the following order will be entered.

ORDER: The motion is denied. Paul Ziah Dallo, No. A30 848 215, slip op. at 3–4 (Bd. Immigration App. Jan. 4, 1985).

**8.** Subsequent to oral argument, the Supreme Court decided *INS v. Rios-Pineda*, — U.S. —, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985), which emphasizes the Board's discretion and the impropriety of frivolous appeals. Although we are guided by many of the same concerns that guided the Supreme Court, we do not rely on its holdings in finding this petition without merit.

## The Habeas Corpus Petition

Dallo's petition for a writ of habeas corpus, No. 85–1033 on appeal, asks for his release on bond pending the exhaustion of his judicial remedies. Those remedies are, of course, exhausted with the release of this opinion and accompanying order, and this appeal is therefore moot. We note, however, that this petition essentially realleged the facts relied on in the three previous petitions for the writ, except for the procedural status of Dallo's motions that the Board reopen his deportation proceedings. In addition, it is well-established that Dallo must show some sort of special circumstances, including a substantial likelihood of success, to obtain the predisposition relief he sought. *See, e.g., Aronson v. May,* 85 S.Ct. 3, 13 L.Ed.2d 6 (1964) (Douglas, J., in chambers); *Ostrer v. United States,* 584 F.2d 594 (2d Cir.1978); *Calley v. Callaway,* 496 F.2d 701 (5th Cir.1974) (per curiam); *Baker v. Sard,* 420 F.2d 1342, 1343–44 (D.C.Cir.1969). As Dallo plainly could not make such a showing, this appeal was obviously without merit.

## Conclusion

The INS first became aware on November 14, 1979, that Dallo's presence in the United States was based on fraud. Dallo was able to delay administrative enforcement of deportation until March 15, 1984, when he was ordered to report for deportation and failed to do so. This apparently created the impression in his mind that the immigration laws can safely be evaded by obfuscation and delay.

We are not responsible for inefficiency and delay in the INS, but we are responsible for it here. Dallo and his counsel have consumed an incredible amount of judicial and administrative resources with this series of proceedings, few of which have raised substantial questions at any point and none of which raise substantial questions in this Court. The primary purpose of the proceedings here has been to obtain the automatic stay provided in section 106(a)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a)(3).[9] Indeed, it is apparent that counsel's purpose in separately moving the Board to reconsider each ground, rather than making a consolidated motion, was to increase the possible number of appeals to this Court. An appeal is frivolous if it is obviously without merit and is prosecuted for delay, harassment, or other improper purposes. *See Ruderer v. Fines,* 614 F.2d 1128, 1132 (7th Cir.1980). Every proceeding here being obviously without merit and the petitioner's purpose being delay, all three petitions on review are frivolous. The courts of appeals have not hesitated to assess penalties against such frivolous petitioners. *See Martin v. Commissioner,* 756 F.2d 38, 40–41 (6th Cir.1985); *Jaloy Manufacturing Co. v. United States Fidelity & Guaranty Co.,* 736 F.2d 1131, 1134 (6th Cir.1984); *Beer v. Commissioner,* 733 F.2d 435, 437 (6th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 105 S.Ct. 185, 83 L.Ed.2d 119 (1984); *TIF Instruments v. Colette,* 713 F.2d 197, 201 (6th Cir.1983); *Muigai v. INS,* 682 F.2d 334, 337 (2d Cir.1982); *Acevedo v. INS,* 538 F.2d 918, 920–21 (2d Cir. 1976) (per curiam); 28 U.S.C. § 1912; Fed. R.App.P. 20, 38.

It is especially appropriate here to assess a penalty against Dallo's counsel, pursuant to 28 U.S.C. § 1927. An immigrant who is truly determined not to return to his native country may be undeterred by such penalties, but it should be possible to control the flood of frivolous petitions by penalizing counsel. Furthermore, the actual petitioner may be unaware that his legal position is utterly without merit, whereas counsel can be expected to know the merits of the positions they take. A lawyer should "represent a client zealously," Model Code of Professional Responsibility Canon 7, but it

---

**9.** We note that this stay, automatic unless the court otherwise directs, provides aliens subject to deportation with procedural protection even stronger than that given to prisoners under sentence of death appealing a denial of habeas corpus, who must obtain a certificate of probable cause to appeal. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); 28 U.S.C. § 2253.

is well-recognized that the obligation does not justify the assertion of frivolous positions in litigation. Model Rules of Professional Conduct Rule 3.1; Model Code of Professional Responsibility EC 7–4, DR 7–102(A); *see Acevedo*, 538 F.2d at 921. We note that repeated frivolous petitions for review of immigration decisions caused the First Circuit to take disciplinary action against counsel, resulting in a fine and suspension. *In re Bithoney*, 486 F.2d 319 (1st Cir.1973).

The petitions for review are denied, the appeal is dismissed, and the petitioner is ordered immediately deported. Double costs are assessed against petitioner and his counsel.