812 F.2d 1408
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Aureliano SILVA-OLIVA, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 86-3199.
 United States Court of Appeals, Sixth Circuit.
 Jan. 21, 1987.
 
 Before JONES and RYAN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner Aureliano Silva-Oliva appeals from the decision of the Board of Immigration Appeals ("BIA" or "Board") affirming the Immigration Judge's denial of Silva-Oliva's Application to Suspend Deportation. Silva-Oliva contends that the Board erred in concluding that he failed to establish either the seven years continuous physical presence or the extreme hardship which are necessary prerequisites to a suspension of deportation. See 8 U.S.C. Sec. 1254(a)(1) (1982). Because we find no error in the conclusions of the BIA, we affirm.
 
 
 2
 Silva-Oliva was born in Mexico in 1962 and, in 1971, he entered the United States without inspection. In November, 1982, Silva-Oliva was interviewed at his home by two officers of the Immigration & Naturalization Service ("INS"). Silva-Oliva stated that he most recently reentered this country from Mexico in July, 1978. The INS determined that Silva-Oliva was present in the United States unlawfully, and served him with an INS Departure Notice ordering him to leave the country on or before December 2, 1982. Silva-Oliva failed to depart as ordered, and the instant INS deportation proceeding followed.
 
 
 3
 Silva-Oliva conceded in the INS proceeding that he had entered this country without inspection and was therefore deportable under section 241(a)(2) of the Immigration and Naturalization Act ("Act"). 8 U.S.C. Sec. 1251(a)(2) (1982) (alien deportable if he "entered the United States without inspection ..."). Silva-Oliva then applied to the INS to suspend deportation under section 244(a)(1) of the Act, supporting his application with documentary evidence and affidavits. See 8 U.S.C. Sec. 1254(a)(1) (1982).[1] An Immigration Judge held a hearing at which Silva-Oliva was the only witness. The Judge subsequently denied Silva-Oliva's application on the grounds that Silva-Oliva had not satisfied his burden of proving the statutory prerequisites of seven years continuous physical presence and extreme hardship. See id. The BIA affirmed the Immigration Judge's determinations, and this appeal ensued.[2]
 
 
 4
 Silva-Oliva first contends that the BIA erroneously relied on his statement to INS officers concerning his July, 1978 reentry into the United States to conclude that he failed to establish continuous physical presence in this country for the seven years preceding the date of his application to suspend deportation. Silva-Oliva argues that the evidentiary value of his statement was overwhelmed by the documentary evidence and affidavits which he submitted in support of his application.[3] We disagree.
 
 
 5
 The Board's conclusion that Silva-Oliva did not satisfy the requirement of seven years continuous physical presence is a finding of fact which may not be reversed on appeal "if supported by reasonable, substantial, and probative evidence on the record considered as a whole...." 8 U.S.C. Sec. 1105a(a)(4) (1982); see Ramos v. INS, 695 F.2d 181, 185 (5th Cir.1983). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Moreover, in reviewing the Board's findings for substantial evidence, we will not reverse credibility determinations or reweigh the evidence. See D'Andrea v. United States INS, 335 F.2d 377, 378 (6th Cir.1964); cf. Moseley v. Peabody Coal Co., 769 F.2d 357, 360 (6th Cir.1985) (substantial evidence review of the Benefits Review Board's findings of fact under the Black Lung Act).
 
 
 6
 Applying these principles, we find that the BIA's determination is supported by substantial evidence. Silva-Oliva's documentary evidence is inconclusive.[4] Although several of the documents are probative in showing that Silva-Oliva was present in this country at some time, none is probative of his continuous presence here. The only evidence which may be probative of his continuous physical presence are the affidavits from his sister and his uncle, both of which state that Silva-Oliva has continuously "resided" here since April, 1973.[5] The affiants' declarations that petitioner has "resided" in this country for more than seven years, however, do not mandate the conclusion that he has been "physically present" in this country, as the statute requires. See 8 U.S.C. Sec. 1254(a)(1) (1982). Moreover, even assuming that the affidavits are probative of continuous physical presence, the fact that both affiants are related to petitioner suggests the possibility of bias. Under these circumstances, the BIA did not err in concluding that the affidavits were less credible and less reliable than Silva-Oliva's own statement to INS officers that he last entered the country in July, 1978.[6] This statement was made at a time when Silva-Oliva was unaware that his statement might have a detrimental impact on his Application to Suspend Deportation, and thus constitutes evidence which "a reasonable mind might accept as adequate to support" the Board's conclusion that Silva-Oliva did not satisfy the continuous presence requirement. See Perales, 402 U.S. at 401. We hold, therefore, that petitioner's statement to INS officers that he entered the country in 1978 is "reasonable, substantial, and probative evidence on the record considered as a whole," 8 U.S.C. Sec. 1105a(a)(4) (1982), to support the Board's finding that Silva-Oliva did not satisfy the requirement of seven years continuous physical presence in the United States.
 
 
 7
 Although this holding is alone sufficient to support affirmance of the BIA's decision, we also disagree with Silva-Oliva's contention that the Board erred in finding that no extreme hardship would result from his deportation. Section 244(a)(1) of the Act requires that a petitioner who seeks suspension of deportation be "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. Sec. 1254(a)(1). In reviewing this language the Supreme Court has observed that the words "extreme hardship" are not self-explanatory. See INS v. Wang, 450 U.S. 139, 144 (1981) (per curiam).
 
 
 8
 But the Act commits their definition in the first instance to the Attorney General and his delegates, and their construction and application of this standard should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute.
 
 
 9
 ....
 
 
 10
 The Attorney General and his delegates have the authority to construe "extreme hardship" narrowly should they deem it wise to do so. Such a narrow interpretation is consistent with the "extreme hardship" language, which itself indicates the exceptional nature of the suspension remedy.
 
 
 11
 Id. at 144-45. Consequently, an appellate court may reverse an extreme hardship determination only if the BIA abused the broad discretion granted to it by Congress. See Zamora-Garcia v. United States Department of Justice INS, 737 F.2d 488, 490 (5th Cir.1984); see also Dallo v. INS, 765 F.2d 581, 588 (6th Cir.1985); Balani v. INS, 669 F.2d 1157, 1162 (6th Cir.1982) (per curiam) ("The Wang reversal indicates the Supreme Court's determination that matters of immigration should be left with the Service, to be reviewed by the Court only upon a showing of abuse of discretion."). The Board abuses its discretion if it fails to consider all the factors that are relevant to the extreme hardship determination, see Zamora-Garcia, 737 F.2d at 490-91; Ramirez-Gonzalez v. INS, 695 F.2d 1208, 1211 (9th Cir.1983), or if its consideration of those factors is irrational or contrary to law. See id.; Balani, 669 F.2d at 1160-61.
 
 
 12
 Silva-Oliva asserted in the INS proceeding that deportation would cause hardship to himself and to his parents, who are aliens "lawfully admitted for permanent residence." 8 U.S.C. Sec. 1254(a)(1) (1982). The alleged hardship was premised on the impending separation of Silva-Oliva from his family, who all now reside in the United States. The BIA rejected this argument on the grounds that Silva-Oliva was a twenty-three year old man, that he claimed to have lived with his grandparents since 1971, and that his parents failed to provide the necessary documentation to legalize him, a step which his parents were able to complete for their other children. The Board buttressed its conclusion by noting that Silva-Oliva spoke little English and was a farm laborer. Although these facts do not compel the conclusion of no extreme hardship, we conclude that the Board has considered the relevant factors, and that its analysis of those factors was neither irrational nor contrary to law. See Ramirez-Gonzalez, 695 F.2d at 1211. Accordingly, we hold that the Board did not abuse its discretion in holding that no extreme hardship would result from Silva-Oliva's deportation.
 
 
 13
 In light of the foregoing, the decision of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 [1]
 Section 244(a)(1) of the Act permits the Attorney General, in his discretion, to suspend deportation of an otherwise deportable alien who establishes: (1) continuous physical presence in the United States for at least seven years prior to the date of application; (2) good moral character; and (3) extreme hardship. 8 U.S.C. Sec. 1254(a)(1) (1982)
 
 
 [2]
 Because petitioner has conceded deportability and because his "good moral character" is not in dispute, the only issues before us are whether the BIA erred in concluding that petitioner did not satisfy the continuous physical presence and extreme hardship requirements
 
 
 [3]
 He attempts to bolster this argument by further contending that the statement was "involuntary" because he was confused and fearful in his interview with the INS officers
 
 
 [4]
 The documentary evidence which Silva-Oliva introduced to establish continuous physical presence in the United States since 1971 included: an undated Armed Forces Information Request Voucher; a letter from the Selective Service System dated 11/5/82; a letter dated 5/5/83 from his current employer stating that Silva-Oliva had "been employed off and on since September, 1977"; a letter dated 5/5/83 from another current employer; a land contract which his parents executed on 7/27/82; his parents' Certificate of Marriage; his Mexican Birth Certificate; and a letter dated 5/20/83 which states that Silva-Oliva was enrolled in summer school in 1973
 
 
 [5]
 Before the BIA rendered its decision, Silva-Oliva submitted an additional affidavit sworn by a Church Deacon from Hartford, Michigan. The BIA did not expressly consider this affidavit. In any event, the Deacon represents only that he has known Silva-Oliva since 1971. He does not state that Silva-Oliva has been continuously present in this country since 1971. Thus, like Silva-Oliva's documentary evidence, this affidavit is not probative of his continuous physical presence in the United States
 
 
 [6]
 We perceive Silva-Oliva's "involuntary statement" argument, see supra note 3, as an attempt to have this court reverse the Board's credibility determination and reweigh the evidence, which we may not do under the substantial evidence standard. The INS, on the other hand, interprets the "involuntary statement" argument as a constitutional challenge to the introduction of the statement in the INS proceedings. Appellee's Brief at 14-16. Even if this is the correct characterization, however, there is no evidence in the record before us that Silva-Oliva raised a constitutional objection before the BIA or the Immigration Judge. He is therefore precluded from raising the issue on appeal. Cf. Navia-Duran v. INS, 568 F.2d 803, 807 (1st Cir.1977) (constitutional issue, which was not first presented to the Immigration Judge, decided on appeal because the BIA considered and disposed of the issue on the merits)