**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0865n.06

Case No. 09-3718

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Dec 20, 2011*

LEONARD GREEN, Clerk

| | |
|---|---|
| TATYANA ANATOLYEVNA SOVA; | ) |
| NATALYA M. ZVONAREVA, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | )  ON PETITION FOR REVIEW |
| | )  FROM A DECISION OF THE |
| | )  BOARD OF IMMIGRATION |
| ERIC H. HOLDER, JR., Attorney General, | )  APPEALS |
| | ) |
| Respondent. | ) |
| | ) |
| _____ | ) |

BEFORE: BATCHELDER Chief Judge; SILER and COLE, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.**   Petitioner Tatyana Antolyevna Sova ("Tatyana") seeks review of the May 13, 2009, order of the Board of Immigration Appeals ("BIA") affirming the order of the Immigration Judge ("IJ") finding Tatyana removable and denying her request for a hardship waiver under 8 U.S.C. § 1186a(c)(4). In this petition for review, Tatyana primarily alleges procedural errors. We **DISMISS** her petition for review.

**I.**

Tatyana is a native and citizen of Russia. She met her now-ex-husband, Walter Sova ("Walter"), a United States citizen, at a social gathering during his visit to Russia around June 1995. They maintained contact with each other, and Walter visited her again in December 1995. Around April 1996, Walter proposed to Tatyana over the phone. On July 13, 1996, Tatyana, along with her

daughter, Natalya Zvonareva ("Natalya"),[1] entered the United States on a K-1 fiancée visa. Walter and Tatyana were married on July 18, 1996. Shortly thereafter, and on the basis of this marriage, Tatyana had her visa status adjusted to that of a conditional permanent resident. *See* 8 U.S.C. § 1186a(a)(1).

The marriage did not last. Walter filed for divorce, and on November 13, 1997, the marriage was judicially terminated in Michigan state court. On July 29, 1998, Tatyana filed a petition to remove conditions from her permanent resident status. *See id.* § 1186a(c). Tatyana applied for a hardship waiver under § 1186a(c)(4).

On August 3, 1999, the Immigration and Naturalization Service ("INS") interviewed Tatyana under oath regarding her hardship-waiver petition. In January, July, and October 2003, INS and then the Department of Homeland Security ("DHS")[2] informed Tatyana via letter that it planned to deny her petition to remove the condition on her status because she had failed to show that her marriage was entered into in good faith.

On October 2, 2003, DHS denied Tatyana's petition to remove the condition and terminated her status. On October 7, 2003, DHS served Tatyana with a notice to appear, charging her with being removable as an alien whose conditional permanent resident status was terminated, *id.* § 1227(a)(1)(D)(i), and as an alien who gained entry into the United States on the basis of a fraudulent marriage, *id.* § 1227(a)(1)(G)(i). Tatyana denied the charges of removability and asked the IJ to

---

[1] While Natalya was a party to the proceedings before the IJ and BIA, Tatyana's brief before this court informs us that Natalya has since become eligible for a green card and was dismissed as a party by the BIA on December 30, 2009.

[2] On March 1, 2003, INS ceased to exist as an agency when most of its powers and responsibilities were transferred to the newly-created DHS.

review her request for a hardship waiver based on her claim that she entered into the marriage in good faith.

On November 15, 2006, the IJ held a hearing. Tatyana testified that she had entered into the marriage in good faith and that the marriage bore all the indicia of a regular, valid marriage. She also submitted a notarized letter from Walter, dated July 20, 1998, in which Walter took responsibility for the divorce, explained that the marriage was entered into in good faith, and pleaded with authorities to let Tatyana stay in the country. DHS submitted evidence that included a statement that Walter provided to INS, retracting his July 1998 letter. In it, he stated that he had only written the July 1998 letter because Tatyana promised to remarry him if he did. He also included a copy of a letter he had written in February 1999 to Tatyana's mother in Russia explaining the divorce and other details of their failed relationship. On December 15, 2006, the IJ denied Tatyana's waiver request, sustained the charges of removability, and ordered her and Natalya removed to Russia. The IJ concluded that Tatyana failed to carry her burden of showing that her marriage was entered into in good faith. The IJ noted a lack of corroborating documentary evidence.

Tatyana appealed to the BIA the denial of her good faith waiver. She also moved for remand on the basis of ineffective assistance of counsel. On May 18, 2009, the BIA dismissed Tatyana's appeal and denied the motion to remand. Tatyana filed this petition for review.

## II.

Under 8 U.S.C. § 1186a, an alien who attains conditional permanent resident status by marrying a United States citizen must file a joint petition with her spouse to remove the "conditional basis" of her status. *Id.* § 1186a(c)(1). Such an alien may, however, seek a waiver of the joint-

petition filing requirement by showing that "the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the [joint-petition filing requirements]." *Id.* § 1186a(c)(4)(B). Grant of the waiver removes the condition on the permanent resident status. *Id.* § 1186a(c)(4). The decision to grant a waiver is within "the Attorney General's discretion." *Id.*

Where the BIA adopts the IJ's decision and supplements that decision with its own comments, as in this case, we review both the BIA's and the IJ's opinions. *See Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (per curiam). Because the decision concerning the good faith waiver is entrusted to the Attorney General's discretion, we review the denial of the waiver only for purely legal errors. *See* 8 U.S.C. § 1252(a)(2)(B); *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004). We review de novo such questions of law. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

Tatyana argues that the IJ erred by allowing DHS to present letters from her ex-husband Walter without affording her an opportunity to cross-examine him at the hearing. She argues that this failure constituted a violation of her regulatory, statutory, and constitutional rights. The record reflects that DHS requested that the IJ issue a subpoena to two different addresses to compel Walter to appear to testify. One subpoena was returned marked by the postal service as "Unclaimed," while the other was returned marked "Forwarding Time Expired." Tatyana, however, never requested that the IJ issue a subpoena for Walter. Though Walter did not testify for either party, both parties submitted conflicting letters from him, described above.

Tatyana's regulatory claim fails. The IJ has "exclusive jurisdiction to issue subpoenas requiring the attendance of witnesses . . . . An Immigration Judge may issue a subpoena upon his or her own volition or upon application of the Service or the alien." 8 C.F.R. § 1003.35(b)(1). If the IJ is unsuccessful in obtaining the appearance of the witness, it is told to enlist the help of the district attorney:

> If a witness neglects or refuses to appear and testify as directed by the subpoena served upon him or her in accordance with the provisions of this section, the Immigration Judge issuing the subpoena shall request the United States Attorney for the district in which the subpoena was issued to report such neglect or refusal to the United States District Court and to request such court to issue an order requiring the witness to appear and testify . . . .

*Id.* § 1003.35(b)(6).

As this court has recognized, "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Here, however, because Tatyana did not comply with the regulation she is not entitled to the benefits of it. The regulation requires that the party applying for the subpoena "state in writing or at the proceeding, what he or she expects to prove by such witnesses . . . and to show affirmatively that he or she has made diligent effort, without success, to produce the same." 8 C.F.R. § 1003.35(b)(2). Here, it was the Government that applied for the subpoena, not Tatyana. There is no evidence in the record that Tatyana submitted any such application or made such showings. While the enforcement provision is worded in mandatory terms, it applies only to subpoenas served upon the witness "in accordance with the provisions of this section." *Id.* § 1003.35(b)(6). Tatyana cannot claim the benefits of the subpoena enforcement regulation because she did not herself comply

with the regulation. *See Stolaj v. Holder*, 577 F.3d 651, 659 (6th Cir. 2009) (holding that IJ did not abuse his discretion when he denied petitioner's request for a subpoena, where the petitioner did not comply with 8 C.F.R. § 1003.35(b)(2)). Cases from other jurisdictions have granted relief for an IJ's failure to allow or enforce a subpoena, but only when the petitioner properly applied for a subpoena under 8 C.F.R. § 1003.35(b). *See Malave v. Holder*, 610 F.3d 483, 487 (7th Cir. 2010) (granting relief where IJ denied application for subpoena even though petitioner had complied with regulations); *Ramos de Rojas v. Gonzales*, No. 04-74682, 2007 WL 705832, at *1–2 (9th Cir. Mar. 6, 2007) (mem.) (granting relief where IJ did not properly enforce a subpoena granted upon the alien petitioner's proper application).

Tatyana's statutory claim also fails. Section 1229a states that in removal proceedings, "the alien shall have a reasonable opportunity . . . to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B). Tatyana claims that she was denied a "reasonable opportunity" to cross-examine Walter because DHS presented letters from Walter and the IJ did not do enough to secure Walter's presence at the hearing. In *Dallo v. INS*, 765 F.2d 581, 586 (6th Cir. 1985), the government issued three subpoenas to a particular witness, all of which failed to secure the witness's presence to testify. The court held that three attempts constituted "reasonable effort[s]" by the government. *Id.* Under those circumstances, the court held it was permissible for the government to present hearsay instead of live testimony subject to cross-examination. *Id.* We conclude that the attempts to subpoena Walter at two different addresses were reasonable efforts, and the IJ did not violate Tatyana's statutory right to a "reasonable opportunity . . . to cross-examine" Walter.

Tatyana's claim that her due process right to cross-examine a witness was violated also fails because there is no such constitutional right in an immigration proceeding seeking discretionary relief. The hearing was not a criminal proceeding, so the Confrontation Clause does not apply. *See Stolaj*, 577 F.3d at 659. Any right to cross-examine must be found in the Fifth Amendment's Due Process Clause. *Id.* But there is no liberty interest in an immigration proceeding seeking discretionary relief, and where there is no life, liberty, or property interest, there is no due process protection. *See Patel v. Gonzales*, 470 F.3d 216, 220 (6th Cir. 2006); *see also Jebeili v. Holder*, 421 F. App'x 547, 549 (6th Cir. 2011) (applying rule in discretionary waiver context).[3]

Tatyana also argues that the BIA engaged in improper fact finding when it cited portions of the letters Walter sent to INS/DHS at various times. While the BIA may not engage in additional fact finding, *see In re Adamiak*, 23 I. & N. Dec. 878, 880 (BIA 2006), it is clear that the BIA did not engage in such fact finding here. The BIA summarized the evidence in the record and concluded that the IJ's decision was not clearly erroneous. The BIA discussed the letters from Walter and observed—just as the IJ did—that Tatyana did not present sufficient corroborating evidence. The BIA did not settle any unresolved factual disputes.

Lastly, Tatyana argues that her counsel was ineffective. Because immigration proceedings are not criminal in nature, any right to effective assistance of counsel rests only on the Due Process Clause. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). But as we have already observed, we have

---

[3] Tatyana may also be arguing that her due process rights were also violated when the agency failed to follow its own regulation. We noted above that the agency did not violate its own regulation. But even if it had, while "[a]n agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process," *Wilson*, 378 F.3d at 545 (quoting *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998)), we are unaware of any case that states that *every* violation of an administrative regulation equals a due process violation.

held that there is no right to due process in a discretionary hearing. Without due process rights, there can be no right to effective assistance of counsel. *See, e.g.*, *Reda v. Mukasey*, 294 F. App'x 182, 185 (6th Cir. 2008) (denying petitioner's claim of ineffective assistance of counsel in discretionary relief hearing).[4]

## III.

For these reasons we **DISMISS** the petition for review.

---

[4]Tatyana's counsel suggested at oral argument for the first time, and again in a Rule 28(j) letter, that we remand the case to the BIA because the BIA applied the standard of *Matter of Compean*, 24 I & N Dec. 710 (BIA 2009), in deciding Tatyana's motion to remand for ineffective assistance of counsel. Shortly after the BIA's decision, the Attorney General vacated the opinion in *Compean* and instructed that DHS should use the old standard of *Matter of Lozada*, 19 I & N Dec. 637 (BIA 1988). *See In re Compean*, 25 I & N Dec. 1, 3 (BIA 2009). Regardless of the merits of this argument, there is no reason why this argument could not have been raised by counsel earlier. It is deemed waived. *See Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 714 (6th Cir. 2001).