Brigette Karin JOHNSON, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Nos. 91–70112, 91–70563.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1992.

Decided July 29, 1992.

Before: ALARCON, NORRIS, and
O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are asked to decide whether violation of the Travel Act by an alien can be a deportable offense.

Johnson seeks review of a decision by the Immigration and Naturalization Service ("INS") ordering her deportation. She also asks us to review whether the Board of Immigration Appeals ("BIA") erred in not reopening her deportation proceeding to consider new evidence.

I

Johnson is a German citizen who emigrated to the United States in 1979 and later attained permanent resident status. In 1985, she transported an automobile from Texas to California for her boyfriend. The car contained a hidden compartment which was used to transport the proceeds from her boyfriend's ongoing drug transactions.

Johnson pled guilty to an information which charged her with "travel[ing] in interstate commerce ... with the intention of distributing the proceeds derived from the unlawful distribution of narcotics and controlled substances...." in violation of the Travel Act, 18 U.S.C. § 1952.[1] Johnson also told the federal district court in Oklahoma that she "believed that my boyfriend was going to use it [the car] to put money in it from narcotics." The court sentenced Johnson to four years imprisonment and a $4,000 fine. Six months of the sentence were to be served in a jail-type institution followed by three and one-half years of probation.

Cindy M. Cipriani, Marcelle E. Mihalia, Peter N. Larrabee, Gray, Cary, Ames & Frye, San Diego, Cal., for petitioner.

David M. McConnell and Charles E. Pazar, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, D.C., for respondent.

1. The Travel Act, 18 U.S.C. § 1952, in effect in 1985 read in pertinent part:

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

.  .  .  .  .

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more that $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving ... narcotics or controlled substances...."

■ The INS then ordered Johnson to show cause why she should not be deported for this criminal violation. The matter was transferred from Oklahoma to San Diego on Johnson's motion. Pursuant to that motion, her attorney filed proof of Johnson's California residence. Johnson filed with the INS, as part of her showing, a Drug Enforcement Agency ("DEA") affidavit which implicated her to a greater extent in her boyfriend's drug dealing activities. Ultimately, in June 1988, Johnson was ordered deported by an Immigration Judge ("IJ") under the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11),[2] due to her violation of the Travel Act.

Johnson appealed the IJ's order of deportation to the BIA which affirmed in January 1991. In April 1991, Johnson petitioned the BIA to reopen the proceeding and to reconsider the decision not to waive deportation. This consolidated appeal followed the BIA's reaffirmation of the deportation order and its denial of the petition to reopen the proceeding.[3]

## II

### A

Johnson argues that a violation of the Travel Act cannot properly be a predicate offense for deportation under 8 U.S.C. § 1251(a)(11) since it is not a "law ... relating to a controlled substance."

■ The Travel Act specifically defines unlawful activity as "any business enterprise involving ... narcotics or controlled substances." 18 U.S.C. § 1952(b)(1). It is violated when one travels in interstate commerce with intent to distribute the proceeds of any unlawful activity. 18 U.S.C. § 1952(a)(1). Johnson's criminal conduct involved narcotics and controlled substances. She pled guilty to "travel[ing] in interstate commerce ... with the intention of distributing the proceeds derived from the unlawful distribution of narcotics and controlled substances...." We have no hesitancy in concluding that Johnson was convicted of violating a law relating to a controlled substance.

■ Johnson nevertheless argues that the Travel Act is a general law covering other criminal activity than just drug-related conduct and therefore cannot be considered. We are unpersuaded. The mere fact that the Travel Act outlaws other forms of criminal interstate travel does not mean it is not also, in appropriate cases, a law relating to controlled substances.

Johnson also attempts to analogize her situation to cases where an alien was convicted of misprision (concealment) of a felony, 18 U.S.C. § 4, and of illegally carrying a firearm during the commission of a felony, 18 U.S.C. § 924(c), yet escaped deportation. *Castaneda De Esper v. INS*, 557 F.2d 79 (6th Cir.1977); *Matter of Carrillo*, 16 I & N Dec. 625 (BIA 1978).[4] These cases are clearly distinguishable. Notwithstanding the drug-related nature of the underlying conduct, the offenses of conviction did not pertain to nor mention controlled

---

**2.** 8 U.S.C. § 1251 (1988), in effect when Johnson was ordered deported, reads in pertinent part:

(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

. . . . .

(11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation of a State, the United States or a foreign country relating to a controlled substance (as defined in section 802 of Title 21).

Even though the consequences of deportation can be as extreme as criminal punishments, a deportation proceeding is a civil action and no ex post facto problem arises from applying a change in the immigration law which occurs after the events in question. *Galvan v. Press*, 347 U.S. 522, 531, 74 S.Ct. 737, 742–43, 98 L.Ed. 911 (1954) ("the *ex post facto* Clause ... has no application to deportation."). Hence, the INS properly applied section 1251 as in effect in 1988 and not the version in effect in 1985 when Johnson committed her criminal act.

**3.** We have jurisdiction pursuant to 8 U.S.C. § 1105a.

**4.** We note that these cases were decided under an earlier version of 8 U.S.C. § 1251(a)(11) which was not as all-encompassing in its definition of a drug related offense as is the current version. *See* The Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1751, 1986 U.S.C.C.A.N. (100 Stat.) 3247 (codified as amended at 8 U.S.C. § 1251 (1988)).

substances. Johnson's offense of conviction *was* for a crime expressly relating to controlled substances, and for direct involvement in a drug transaction, not for some other type of criminal activity.

Consequently, we hold that violation of the Travel Act under the circumstances before us is properly a basis for deportation under 8 U.S.C. § 1251.

### B

■ Johnson's argument that she did not have the specific intent to violate the Travel Act is without merit. Her contention is foreclosed by a simple reading of the information to which she pled guilty and the petition she filed to enter her guilty plea.

The information charged that she "traveled in interstate commerce ... [in an automobile] which had been modified to contain a hidden compartment for the purpose of carrying large amounts of money, *with the intention* of distributing the proceeds derived from the unlawful distribution of narcotics and controlled substances...." In her Petition to Enter Plea of Guilty Johnson said: *"I believed* that my boyfriend was going to use it to put money in it from narcotics." (Emphases added). These admissions suffice to establish specific intent to violate the Travel Act.[5]

In any event, the district court was required to hear testimony and evidence pursuant to the federal rules when taking Johnson's guilty plea. That court could not enter a judgment of guilt "without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed. R.Crim.P. 11(f). That court was satisfied that Johnson had properly pled guilty and that there was a factual basis for all the elements, including the intent element, for a violation of the Travel Act.

### III

■ Johnson further challenges the IJ's and the BIA's reliance upon a DEA affida-

vit. Johnson's attorney offered an affidavit containing incriminating testimony regarding Johnson's involvement in her boyfriend's drug dealings into evidence to support her motion to transfer venue of the deportation hearing to San Diego. Johnson nevertheless argues that the use of the affidavit was a violation of due process. She points out that she was not allowed to cross-examine the witnesses who testified in the affidavit or to force the DEA to disclose the identity of the confidential informant.

■ We are unpersuaded by Johnson's argument. Although BIA hearings are not governed by strict rules of evidence, *Baliza v. INS,* 709 F.2d 1231, 1233 (9th Cir. 1983), an analogy to court procedure is appropriate in this case. It is well-settled that even criminal "[a]ppellants may not seek reversal on the basis of their own evidentiary errors." *United States v. Miller,* 771 F.2d 1219, 1234 (9th Cir.1985) (damaging testimony elicited by defense counsel on cross). *See also Burgess v. Premier Corp.,* 727 F.2d 826, 834 (9th Cir.1984) (attorney may waive client's right to raise issue of error by eliciting inadmissible evidence).

We recently reiterated that "[t]he doctrine of invited error prevents a defendant from complaining of an error that was his own fault." *United States v. Reyes–Alvarado,* 963 F.2d 1184, (9th Cir.1992) (citing *United States v. Montecalvo,* 545 F.2d 684, 685 (9th Cir.1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2184, 53 L.Ed.2d 229 (1977)). In *Reyes–Alvarado,* we held that admission of a co-defendant's post-arrest statement was not reversible *Bruton* error when the statement was elicited by the appellant's attorney. *Reyes–Alvarado,* 963 F.2d at 1187. When an appellant's "tactics backfire[ ]" he cannot complain of error he induced: "A defendant cannot have it both ways." *Id.* at 1187.

---

**5.** Johnson's reliance on *Lennon v. INS,* 527 F.2d 187 (2d Cir.1975) is misplaced. The conviction in *Lennon,* upon which the INS based its decision to refuse an entry visa, was based on a British law without an intent element. *Id.* at

194. In contrast, Johnson pled guilty to an offense under the Travel Act, which does include an intent element. 18 U.S.C. § 1952; *United States v. Gibson Specialty Co.,* 507 F.2d 446, 449 (9th Cir.1974).

This reasoning applies with even greater force to a civil litigant in an INS proceeding. Johnson's attorney offered the DEA affidavit to prove Johnson's connection with southern California so that the proceeding would be transferred. Johnson cannot later be heard to complain that her tactic backfired and that the INS's consideration of this affidavit was error. It was "fundamentally fair" and not a violation of due process for the IJ and the BIA to consider this hearsay evidence when Johnson herself offered it. *Cf. Baliza*, 709 F.2d at 1233–34 (fundamentally unfair when the government offered hearsay affidavit with no attempt to authenticate or investigate).

## IV

■ Johnson contends that the IJ and the BIA erred in failing to waive her deportation due to the equities of her situation. 8 U.S.C. § 1182(c). She also petitions for review of the BIA's refusal to reopen her deportation proceeding to consider new evidence.

The BIA affirmed the IJ's deportation decision on January 29, 1991. On April 2, 1991, in her petition to reopen the deportation proceeding, Johnson offered the following "new evidence": (1) that she had married a United States citizen; (2) that she and her husband had a child; (3) that they had opened a business; and (4) that her probation for the Travel Act violation was terminated early. The BIA, however, had already been aware of the birth of Johnson's child and the termination of her probation before it affirmed the IJ's deportation order. Nevertheless, the BIA again considered all four elements before denying Johnson's motion to reopen the proceeding.

We are satisfied that the BIA did not abuse its discretion in deciding not to waive Johnson's deportation nor in refusing to reopen the proceeding. The BIA decision adequately sets out its reasoning that Johnson did not carry her heavy burden of demonstrating "outstanding equities" that would outweigh the serious controlled substance offense she committed. *Ayala–Chavez v. United States INS*, 944 F.2d 638, 640–41 (9th Cir.1991).

AFFIRMED.

WILLIAM A. NORRIS, Circuit Judge, dissenting:

I disagree that the Board of Immigration Appeals may deport an alien on the basis of otherwise inadmissible evidence, simply because that evidence was placed into the case file by the alien's attorney.

Deportation proceedings need not follow traditional rules of evidence, but are governed by federal statutes, executive regulations, and judicially-mandated procedural requirements. All relevant sources of law make clear that Johnson should have had the opportunity to confront the witnesses against her. 8 U.S.C. § 1252 requires that in deportation hearings "the alien shall have a reasonable opportunity to examine witnesses against him ... and to cross-examine witnesses presented by the government." *See also* 8 C.F.R. § 242.16. Similarly, we have held that hearsay statements such as the BIA affidavit cannot be relied upon if such use is not "fundamentally fair." *Cunanan v. I.N.S.*, 856 F.2d 1373, 1374 (9th Cir.1988); *Baliza v. I.N.S.*, 709 F.2d 1231, 1233 (9th Cir.1983). Accordingly, when the government introduces a hearsay statement and does not attempt to produce the relevant witnesses at the deportation hearing, we have not hesitated to remand to the court below with instructions that the hearsay documents cannot be relied upon unless the government attempts to produce the relevant witnesses. *Cunanan* at 1375; *Baliza* at 1234.

Neither the government nor the majority argues that the hearsay evidence used by the court in Johnson's case is any more reliable or fair than the hearsay evidence which we, and the statute, traditionally reject. Instead, the majority rests content with the fact that the evidence in this case was introduced by Johnson's attorney, rather than the government.

Given the facts of this case, the majority's distinction is unpersuasive. Johnson's attorney introduced the affidavit into the file for the limited purpose of achieving a change of venue to San Diego. This venue motion was entirely distinct from the sub-

sequent Board of Immigration Appeals proceeding, and should have been treated as such by the BIA. Indeed, the administrative regulations governing deportation proceedings recognize that information introduced into a file for one purpose should not be used for other purposes. For example, both custody proceedings and bond proceedings must be viewed as "separate and apart from any deportation hearing or proceeding." *See, e.g.,* 8 C.F.R. § 318(d). While there is no identical restriction for venue proceedings, this is likely due to the fact that venue proceedings rarely involve prejudicial evidence. This case presents the unusual instance in which a venue proceeding does involve such prejudicial evidence. Simply because this case is unusual, however, is no reason for us to depart from the spirit of the regulations, which is that evidence can be introduced for distinct and limited purposes, and that when it is it should not subsequently be available for unfettered use.

I would remand with instructions that unless the government has made a "reasonable effort to produce [ ] its hearsay declarant," *Cunanan* at 1375, the BIA reconsider the case without reliance on the hearsay affidavit.