45 F.3d 435
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Elisio CISNEROS-LEDESMA, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70262.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 17, 1994.*
Decided Dec. 28, 1994.
 
 Before: LAY,** PREGERSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Petitioner Eliseo Cisneros-Ledesma appeals the Board of Immigration Appeals' Order which found him deportable under Sec. 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1251(a)(1). He was found deportable as an intended immigrant in possession of neither a valid visa under Sec. 212(a)(20) of the INA, 8 U.S.C. Sec. 1182(a)(20), nor a labor certificate under Sec. 212(a)(14) of the INA, 8 U.S.C. Sec. 1182(a)(14). We have jurisdiction under Sec. 106(a) of the INA, 8 U.S.C. Sec. 1105a(a). We vacate the Board's order and remand.
 
 I. BACKGROUND
 
 3
 Cisneros is a native and citizen of Mexico. Cisneros was married in the United States to a U.S. citizen in February 1985. In March 1985, his wife filed an immediate relative petition in support of his application to immigrate to the United States. Cisneros' wife allegedly withdrew this petition on September 4, 1985. Cisneros heard about his wife's withdrawal of her petition from a friend, while he was in jail with the friend, and from his wife, sometime before September 19, 1985.
 
 
 4
 According to Cisneros, his wife filed a withdrawal petition because she thought Cisneros had been involved with another woman. When Cisneros' wife found out this was not true, Cisneros said she told him to continue with his application for an immigrant visa.
 
 
 5
 Further, according to Cisneros, his wife was planning to accompany him to Mexico in September when he went there to acquire his immigrant visa, but she did not do so because of lack of funds.
 
 
 6
 On September 19, 1985, Cisneros travelled to Mexico to acquire his immigrant visa. The following day, the U.S. Embassy in Mexico issued an immigrant visa to Cisneros, predicated on immediate relative status. Cisneros re-entered the United States on September 25, 1985.
 
 
 7
 An Order to Show Cause regarding deportation issued March 1986. The order alleged that Cisneros' wife had withdrawn her visa petition on September 4, 1985. The order stated that Cisneros was excludable at the time of his re-entry into the U.S. on September 25, 1985 because he did not have a valid visa. The order also stated Cisneros was excludable at entry because he entered the U.S. for the purpose of performing labor and had not received a Department of Labor certification, a requirement if he did not enter the U.S. under immediate relative status.
 
 
 8
 A deportation hearing began September 1986. When the government attempted to enter the withdrawal petition of Cisneros' wife into evidence, Cisneros objected. Cisneros contended that the withdrawal petition had to be authenticated. Cisneros also argued that his wife should be present at the hearing so she could testify to the circumstances of her filing the withdrawal petition, and so Cisneros would have the opportunity to cross-examine her.
 
 
 9
 The immigration judge continued Cisneros' deportation hearing until November because the government had made no effort to produce Cisneros' wife at the hearing. During the two-month continuance, the INS lodged a new charge against Cisneros. The INS now claimed Cisneros was excludable at entry because Cisneros had entered the U.S. by fraud or willful misrepresentation of a material fact. The INS based this claim on Cisneros' testimony that his wife had told him she had filed a withdrawal petition, and Cisneros' subsequent failure to inform U.S. Embassy officials in Mexico of this when they interviewed him.
 
 
 10
 When the deportation hearing resumed, the investigator for the INS testified about his efforts to locate Cisneros' wife. The investigator stated that he ran the wife's social security number through the Arizona Department of Economic Security and checked records for a driver's license in Arizona. While he located no address in Phoenix, he did find an address in El Mirage, about thirty-five miles from Phoenix. The investigator interviewed the individuals at the El Mirage address, and they said Cisneros' wife might be in Salinas, California. The INS investigator found a Salinas address in Cisneros' file and mailed a notice to appear at the deportation hearing to her at the Salinas address. There was no reply. The INS made no further effort to locate Cisneros' wife.
 
 
 11
 On cross-examination at the resumed hearing, Cisneros' counsel asked the INS investigator why he had not contacted the INS office in Salinas to assist in locating Cisneros' wife. The investigator stated that the Salinas INS office was staffed by border patrol officers, not investigators. The investigator admitted he could have easily contacted the INS office in Salinas, but he added that this was not the normal procedure.
 
 
 12
 The immigration judge also questioned the INS investigator. The judge wanted to know "why wasn't there even a phone call made up there [Salinas]?" The investigator again noted that calling the Salinas office was not the usual policy, and then stated, "I thought [my actions] would suffice." The immigration judge held that the INS did not make a "reasonable effort to locate" Cisneros' wife as required under Baliza v. INS, 709 F.2d 1231 (9th Cir.1983). The immigration judge then excluded from evidence the withdrawal petition of Cisneros' wife.
 
 
 13
 Without the wife's withdrawal petition, the immigration judge concluded that the only remaining evidence to prove lack of a valid visa and fraud by Cisneros was his testimony that he had learned about the withdrawal petition both from his jail friend and his wife. But Cisneros testified further that his wife later told him to go ahead with the petition after she learned that he had not been unfaithful. The immigration judge stated that this information did not meet the notification standard of Sec. 205 of the Act, 8 U.S.C. Sec. 1155. Relying on Matter of Salazar, 12 I. & N.Dec. 167 (BIA 1979), the immigration judge concluded that the information derived from Cisneros' testimony did not constitute actual notice of the withdrawal petition.[1]
 
 
 14
 Further, the immigration judge found that Cisneros was not deportable on the labor certification issue because "[n]o evidence was presented whatsoever that the respondent ever intended to perform work in the United States, nor has any evidence been presented that he has not been issued a labor certification."
 
 
 15
 Finally, on the fraud issue, the immigration judge stated that fraud had to be proved by active participation, rather than merely by a passive act. The judge concluded that because the Embassy personnel did not ask Cisneros about the withdrawal petition, Cisneros' failure to volunteer the information was not fraud or willful misrepresentation.
 
 
 16
 The immigration judge then concluded that was not deportable and ordered the proceedings against him terminated.
 
 
 17
 The INS appealed the immigration judge's order to the Board of Immigration Appeals. The BIA found that the knowledge Cisneros had of his wife's withdrawal petition before his interview at the U.S. Embassy in Mexico was adequate to support the notice requirement of Sec. 205 of the INA.
 
 
 18
 Further, the BIA found that the wife's withdrawal petition should have been admitted by the immigration judge at the deportation hearing for two reasons. First, the BIA distinguished Cisneros' circumstances form Baliza, the case relied on by the immigration judge to exclude Cisneros' wife's withdrawal petition as evidence. In Baliza, the wife's affidavit was contradicted by the alien's testimony. The BIA stated that unlike Baliza, Cisneros' testimony did not contradict the withdrawal petition. Second, the BIA found that the INS had made a reasonable effort to locate Cisneros' wife since "[e]ven Cisneros testified that he was unaware of her current address."
 
 
 19
 The BIA found that "deportability has been established by clear, unequivocal, and convincing evidence," the standard set forth by Woodby v. INS, 385 U.S. 276 (1966), and 8 C.F.R. Sec. 242.14(a). This finding applied to the charges that Cisneros had neither a valid immigrant visa nor a labor certificate. However, the BIA did not find clear, unequivocal, and convincing evidence of fraud and willful misrepresentation.
 
 
 20
 The BIA thus overturned the immigration judge's finding that Cisneros was not deportable on the labor certification and valid immigrant visa issues, but sustained the immigration judge's finding that Cisneros was not deportable under entry by fraud. The BIA then granted Cisneros the "privilege of voluntary departure."
 
 II. ANALYSIS
 
 21
 Cisneros now appeals the BIA's finding that the INS made a reasonable effort to locate and produce his wife at the deportation hearing. Cisneros contends that the INS did not make a reasonable effort to produce his wife, and thus the procedure was fundamentally unfair since he could not cross-examine her. Cisneros further contends that if the withdrawal petition is inadmissible because the INS failed to make a reasonable effort to locate his wife, then the remaining evidence is not clear, unequivocal, and convincing so as to support a finding of his deportability.
 
 
 22
 We review de novo the BIA's interpretation of the requirements of the Immigration and Nationality Act. Hartooni v. INS, 21 F.3d 336, 340 (9th Cir.1994); Abedini v. INS, 971 F.2d 188, 190 (9th Cir.1992). Factual findings by the BIA are conclusive if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Hartooni, 21 F.3d at 340 (quoting 8 U.S.C. Sec. 1105a(a)(4)). Nevertheless, where the agency and the ALJ disagree, the appellate court's reviewing eye may be more searching. UAW v. NLRB, 834 F.2d 816, 819 (9th Cir.1987).
 
 
 23
 The government correctly points out that at an administrative hearing, hearsay evidence is admissible if it is probative and if its admission does not violate fundamental fairness. Baliza v. INS, 709 F.2d at 1233. We stated in Baliza that fundamental fairness is required by 8 U.S.C. Sec. 1252(b)(3), wherein Congress mandated that an alien must have "a reasonable opportunity to examine the evidence against him ... and to cross-examine witnesses presented by the Government." Id. at 1234. Under Sec. 1252(b)(3), the presence of a witness who can only authenticate an affiant's signature on a withdrawal petition is not enough to render its admission fundamentally fair.[2] Rather, as we stated in Baliza, the affidavit's admission will render the proceedings fundamentally unfair if the alien does not have an opportunity to cross-examine the government's witness/affiant. Id. at 1233. We stated further in Baliza that to satisfy the "reasonable opportunity to cross-examine" requirement, the government must make a reasonable effort to locate and produce its witness/affiant. Id.
 
 
 24
 The government contends that it made a reasonable effort to locate and produce Cisneros' wife at the deportation hearing. However, we find that, as a matter of law, the INS did not make a reasonable effort, during the two-month recess of Cisneros' deportation hearing, to locate and produce Cisneros' wife at the resumed hearing. Accordingly we find that under our earlier holding in Baliza, the BIA's reliance here on the disputed withdrawal petition to support its decision that Cisneros is deportable violates fundamental fairness because Cisneros testified, in effect, that his wife had rescinded her withdrawal petition, yet Cisneros was denied the opportunity to cross-examine her on this issue. See also Cunanan v. INS, 856 F.2d 1373, 1375 (9th Cir.1988).
 
 
 25
 In reaching this decision, we note that the immigration judge recessed the hearing for two months for the express purpose of giving the INS a second opportunity to locate and produce Cisneros' wife. But when the hearing resumed, the INS had failed to produce her. The INS' minimal effort here to locate a witness does not satisfy the requirements mandated by Congress in 8 U.S.C. Sec. 1252(b)(3).
 
 
 26
 The INS investigator testified that he could have easily telephoned the Salinas, California INS office to see if Cisneros' wife was present at the Salinas address. A border patrol officer at that office could have gone to the address and verified her whereabouts. But in this instance, the investigator chose not to take even the minimal next step of telephoning the INS in Salinas because he thought the investigation he had done "would suffice."
 
 
 27
 We also agree with the immigration judge's further finding that Cisneros' awareness of the withdrawal petition does not constitute actual notice, as required by 8 U.S.C. Sec. 1155. Although Cisneros testified that he had some awareness of his wife's withdrawal petition, Cisneros' testimony, read as a whole, provides a mixed message as to his knowledge of the petition.
 
 
 28
 Cisneros testified that when his wife learned she had been wrong about his alleged disloyalty to her, she told him to continue with his application for an immigrant visa. Further, according to Cisneros, his wife was going to accompany him to Mexico for his interview with the U.S. Embassy there, and apparently did not go with him only because they lacked the funds. In light of the circumstances surrounding how Cisneros learned of his wife's withdrawal petition, and of Cisneros' testimony that she later told him that she supported his visa application, we agree with the immigration judge's finding that Cisneros' knowledge of the petition did not meet the actual notice requirement of Sec. 205 of the Act.[3]
 
 III. CONCLUSION
 
 29
 We find that the withdrawal petition was properly excluded since the INS failed to make a reasonable effort to locate Cisneros' wife. We also find that Cisneros did not have actual notice of the withdrawal petition. Therefore, we agree with the immigration judge that there was not clear, unequivocal, and convincing evidence to support his deportation.
 
 
 30
 Accordingly, the petition for review is granted, the decision and order of the Board of Immigration Appeals is vacated, and the case is remanded to the Board for further proceedings not inconsistent with this opinion.
 
 O'SCANNLAIN, Circuit Judge, dissenting:
 
 31
 I respectfully dissent. Although I agree with the majority's articulation of the law on use of hearsay in deportation proceedings, I disagree with its application of the law to these facts.
 
 
 32
 In determining that the INS failed to make a reasonable effort to locate its witness, the majority notes that although the immigration judge recessed the hearing for two months for the express purpose of giving the INS an opportunity to locate Mrs. Cisneros, "when the hearing resumed, the INS had failed to produce her." Failure to produce Mrs. Cisneros does not, however, support a conclusion that the INS made no reasonable effort to find her.
 
 
 33
 Indeed, the INS investigator testified that he checked Mrs. Cisneros' social security number through the Department of Economic Security, searched for a record of her driver's license, and went to the addresses revealed through his search. When he located a letter in the INS file which indicated a return address for Mrs. Cisneros in Salinas, California, the investigator sent a letter to that address. Receiving no response to his letter, he chose not to pursue this lead any further.
 
 
 34
 The majority appears to have lost sight of the principle underlying the holdings of Cunanan v. INS, 856 F.2d 1373 (9th Cir. 1998) and Baliza v. INS, 709 F.2d 1231 (9th Cir. 1983). "In the context of a deportation hearing this court has held that 'the only limitation upon its procedure [is] that a hearing, though summary, must be fair.' " Baliza, 709 F.2d at 1233. The admission of evidence must be viewed with in this fairness requirement; thus, "[t]he test is whether the [hearsay] statement is probative and whether its admission was fundamentally fair." Id.
 
 
 35
 Guided by this principle, I am unable to reach the same conclusin as my collegues. Mr. Cisneros testified that he knew of his wife's withdrawal of the visa petition; the hearsay testimony that the government sought to introduce did not contradict such testimony. Thus, there was no danger that it would render the proceedings unfair.
 
 
 36
 In light of both the efforts made by the INS to locate Mrs. Cisnero and the deference we should give to the Agency findings, I would conclude that the BIA's admission of the hearsay statement was not reversible error.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In Salazar, the BIA stated "although we do not agree ... that written notice of revocation to a beneficiary outside the United States is necessary under the terms of section 205 of the Act [8 U.S.C. Sec. 1155], there must be proof of actual notice for the requirements of the provision to have been met." Salazar, 12 I & N at 171. The BIA also stated in Salazar that when an applicant has "a colorable claim to lawful permanent resident status at the time he attempted to enter, the burden [is] upon the Service to show that he should be deprived of this status." Id. at 169
 In Salazar, as in the instant case, the alien's testimony provided a mixed message about his knowledge of the withdrawal petition. Although Salazar testified that he had some knowledge of his wife's withdrawal petition, he also stated that he did not know about her withdrawal until after the visa was issued.
 The BIA found that "the Service had not carried its burden in establishing that the applicant was in fact aware of what had transpired concerning his visa petition...." Id. at 170. Further, the BIA noted that even though there is a "substantial amount of evidence showing that the applicant was aware that his wife may have withdrawn the visa petition, awareness of this fact cannot be equated with actual notice of the revocation on the part of the applicant...." Id.
 
 
 [2]
 The INS investigator who took the withdrawal petition from Cisneros' wife, was present at the hearing. This was the same investigator who was later charged with locating and producing Cisneros' wife when the first hearing was recessed
 
 
 [3]
 The government also argues that revocation of an immigrant visa is automatic under 8 C.F.R. Sec. 205(1). This regulation states that revocation is automatic if, "before the beneficiary's journey to the United States commences" there is "written notice of withdrawal filed by the petitioner with any officer of the Service who is authorized to grant or deny petitions."
 But the government fails to recognize that this regulation must be read in conjunction with 8 U.S.C. Sec. 1155, which imposes a notice requirement. Menezes v. INS, 601 F.2d 1028, 1031 n. 3 (9th Cir.1979). Section 1155 reads in relevant part:
 In no case shall revocation have effect unless there is mailed to the petitioner's last known address a notice of the revocation and unless notice of the revocation is communicated through the Secretary of State to the beneficiary of the petition before such beneficiary commences his journey to the United States.
 8 U.S.C. Sec. 1155.