# United States Court of Appeals
## For the First Circuit

No. 02-2343

JOSE RAMON URENA-RAMIREZ,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Circuit Judge,
Coffin and Cyr, Senior Circuit Judges.

Randy Olen on brief for petitioner.
Robert D. McCallum, Jr., Assistant Attorney General, Civil
Division, Terri J. Scadron, Assistant Director, Office of
Immigration Litigation, and Jennifer A. Parker, Attorney, Office of
Immigration Litigation, on brief for respondent.

August 22, 2003

**SELYA**, **Circuit Judge**.  This case requires us to decide for the first time whether an illegal alien, convicted under the Travel Act for promoting an unlawful activity involving controlled substances, remains eligible for adjustment of status.  Concluding, as we do, that the Board of Immigration Appeals (BIA) correctly answered this question in the negative, we uphold the order of removal and deny the alien's petition for judicial review.

## I.  BACKGROUND

The petitioner, José Ramón Urena-Ramirez, is a native of the Dominican Republic.  He originally entered the United States under a false name and without a valid visa.  Several years later, federal authorities charged him with aiding and abetting the distribution of cocaine.  He pleaded guilty, inter alia, to a reduced charge of traveling in interstate commerce to promote an unlawful activity in violation of the Travel Act, 18 U.S.C. § 1952.  The sentencing court imposed a 21-month incarcerative term, to be followed by three years of supervised release.

The Immigration and Naturalization Service (INS) initiated removal proceedings on November 3, 1997.[1]  The INS claimed that the petitioner was deportable on three grounds,

_____

[1]On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice.  Its enforcement functions were transferred to the Department of Homeland Security.  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).  Because the events at issue here predate that reorganization, we continue to refer to the INS in this opinion.

namely,(i) as an alien not in possession of a valid entry document, 8 U.S.C. § 1227(a)(1)(A); (ii) as an alien who had been convicted of an offense "relating to" a controlled substance, id. § 1227(a)(2)(B)(i); and (iii) as an alien convicted of an aggravated felony, id. § 1227(a)(2)(A)(iii). The government based the latter two charges on the petitioner's Travel Act conviction.

At a removal hearing before an Immigration Judge (IJ), the petitioner conceded deportability on the basis of his illegal entry into the United States. He denied the other charges, contending that the Travel Act violation was neither a drug-related offense nor an aggravated felony. He also requested a discretionary adjustment of status and waiver of deportation pursuant to 8 U.S.C. § 1182(h).[2]

Relying on the record of the petitioner's conviction, including the plea agreement (which revealed that the petitioner had pleaded guilty to traveling in interstate commerce for the specific purpose of promoting "a business enterprise involving cocaine"), the IJ found that the Travel Act conviction constituted both a drug-related offense and an aggravated felony. Accordingly, the IJ declared the petitioner ineligible for discretionary relief, 8 U.S.C. § 1182(h), and ordered his removal. The BIA affirmed this

_____

[2]An alien ordinarily may seek adjustment of status to avoid removal. 8 U.S.C. § 1255(a). Typically, that relief is at the discretion of the Attorney General. Id. § 1182(h). Such a waiver cannot be granted, however, if the petitioner has committed a drug-trafficking offense or an aggravated felony. Id.

decision without opinion. See id. § 1101(47)(B)(i); 8 C.F.R. § 1003.1(a)(7) (formerly designated as 8 C.F.R. § 3.1(e)(4)); see also Albathani v. INS, 318 F.3d 365, 376-77 (1st Cir. 2003) (describing operation of streamlined "affirmance without opinion" procedure). This timely petition for judicial review followed.

## II.  ANALYSIS

The petitioner advances two closely related assignments of error.  First, he claims that the Travel Act is not a law "relating to" a controlled substance.  Second, he protests the classification of his Travel Act conviction as an aggravated felony.

We first consider the applicable standard of review. This case hinges in substantial part on the proper determination of what constitutes a violation of a law relating to a controlled substance under the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101-1537.  The petitioner argues that the BIA incorrectly construed the relevant section of the INA, 8 U.S.C. § 1227(a)(2)(B)(i), to include the Travel Act violation.  In his view, that statute cannot be deemed sufficiently related to a controlled substance because the crime (traveling in interstate commerce) is separate and distinct from the underlying (drug-related) activity. For essentially the same reason, the petitioner challenges the BIA's determination that the Travel Act violation constituted "illicit trafficking," as that term is used in 8 U.S.C.

-4-

§ 1101(a)(43)(B) — a determination that not only converted the offense into an aggravated felony for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii) but also eliminated any chance for the petitioner to obtain discretionary relief (an adjustment of status and withholding of deportation).

So viewed, this case turns on a pure question of law: whether a particular crime (here, a violation of the Travel Act) is a violation of a law relating to a controlled substance within the purview of the INA. That question, as framed, does not implicate the INS's exercise of administrative discretion. Consequently, the question engenders de novo review.[3] See INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999) (explaining that courts normally review de novo an agency's construction of federal statutes); Herrera-Inirio v. INS, 208 F.3d 299, 304 (1st Cir. 2000) (same).

We turn next to the petitioner's principal argument: that the Travel Act violation is separate and distinct from the underlying (drug-related) activity. The BIA rejected this argument. So do we.

The INA provides for the removal of an alien who has "been convicted of a violation of . . . any law . . . relating to

---

[3]Where Congress has entrusted an administrative agency with discretion and the governing statute is silent or ambiguous anent a particular issue, the agency's reading of the statute ordinarily will be upheld if it is reasonable. See INS v. Cardoza-Fonseca, 480 U.S. 421, 448-49 (1987); Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984). This case does not present the occasion for such deference.

a controlled substance." 8 U.S.C. § 1227(a)(2)(B)(i). In interpreting the phrase "relating to," the BIA looks to the degree to which the violation in question is connected to underlying (drug-related) activity. In re Espinoza-Gonzalez, 22 I. & N. Dec. 889 (BIA 1999). If the violation and the underlying activity are "so closely related" that the two could not be considered "separate or distinct," then the two are essentially one and the violation is of a law "relating to" the underlying activity. Id. (quoting Matter of Beltran, 20 I. & N. Dec. 521, 528 (BIA 1992)).

This brings us to the Travel Act, which provides in relevant part:

> Whoever travels in interstate or foreign commerce . . . with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform [any of the acts specified] shall be [punished as provided].

18 U.S.C. § 1952(a)(3). The Travel Act defines the term "unlawful activity" to include, among other things, "any business enterprise involving . . . narcotics or controlled substances . . . ." Id. § 1952(b)(1).

Against this backdrop, we turn to the case at hand. As said, the petitioner pleaded guilty to traveling in interstate commerce to promote a business enterprise involving cocaine (a controlled substance). The conduct underlying the proscribed travel (the promotion of a business enterprise involving cocaine)

-6-

was tantamount to aiding and abetting the distribution of narcotics. The plea agreement makes manifest the petitioner's admission of his involvement in that underlying conduct (and, thus, his culpability for it). Cf. United States v. Salerno, 66 F.3d 544, 550 (2d Cir. 1995) (pleading guilty to interstate travel in furtherance of drug trafficking is tantamount to pleading to a felony drug offense). We see nothing separate or distinct, as a practical matter, between the Travel Act violation and the petitioner's involvement in the cocaine trade. Thus, common sense indicates that the petitioner's violation of the Travel Act was a violation of a law relating to a controlled substance.

In an effort to blunt the force of this reasoning, the petitioner makes a number of counter-arguments. None has merit.

First, he suggests that a violation of the Travel Act cannot be a violation of a law relating to a controlled substance because the Travel Act covers a myriad of criminal activities, many of them non-drug-related (e.g., gambling, bribery). As he sees it, the Travel Act fundamentally relates to racketeering rather than to drug trafficking (indeed, the Travel Act's placement in the United States Code so indicates). For this reason, he likens his offense to misprision of a conspiracy to possess an illegal narcotic — an offense that the Sixth Circuit once ruled was not a violation of a law relating to a controlled substance, see Castaneda De Esper v. INS, 557 F.2d 79 (6th Cir. 1977) — and to the illegal carriage of

-7-

a firearm during the commission of a felony — an offense that the BIA once ruled was not a violation of a law relating to a controlled substance notwithstanding that the felony in question was itself drug-related, see Matter of Carrillo, 16 I. & N. Dec. 625 (BIA 1978).

We do not regard these quarter-century-old precedents as persuasive authority here. In the first place, both cases were decided under an earlier version of the INA, 8 U.S.C. § 1251(a)(11) (1956) (repealed), which was not as sweeping in its definition of a drug-related offense as is the current version. The Ninth Circuit, in refusing to follow Castaneda De Esper and Carrillo on facts very much like those of the case at bar, found this change in the statutory language significant. See Johnson v. INS, 971 F.2d 340, 342 n.4 (9th Cir. 1992). We agree.

Second — and more important — the petitioners in Castaneda De Esper and Carrillo were both found guilty of violating general statutes that made no specific reference to drug-related activity. Thus, in Castaneda De Esper, 557 F.2d at 84, the petitioner was convicted under 18 U.S.C. § 4 for "having knowledge of . . . a felony" and concealing that fact. Similarly, in Carrillo, 16 I. & N. Dec. at 625, the petitioner was convicted under 18 U.S.C. § 924(c) for illegally "carrying a firearm during the commission of a felony." In both cases the statute of conviction was a generic statute that did not mention controlled

-8-

substances.[4]  Unlike those statutes, the Travel Act specifically refers to drug-related activity.  It criminalizes, inter alia, travel in interstate commerce with the intent to promote, carry on, or facilitate an unlawful activity, and specifically defines the term "unlawful activity" to include business enterprises involving controlled substances.  18 U.S.C. § 1952(a)(3)-(b)(1).  This congressional targeting of drug-related activity furnishes a much closer nexus than is afforded by the generic statutes involved in Castaneda De Esper and Carrillo.

We add, moreover, that Congress passed the Travel Act in an effort to deny individuals who act for criminal purposes, such as interstate drug trafficking, "access to the channels of commerce."  Erlenbaugh v. United States, 409 U.S. 239, 246 (1972).  The Travel Act is simply the mechanism that Congress chose to accomplish regulation of the channels of commerce.  See 18 U.S.C. § 1952 (1970) (adding "controlled substances" to the list of unlawful activities contained in the Travel Act).  The petitioner, by traveling in interstate commerce to promote a narcotics enterprise, thus violated a law specifically aimed at the regulation of the narcotics trade.  The fact that the Travel Act

---

[4]The same is true of the state statute that criminalizes solicitation of another "with intent to promote or facilitate the commission of a felony or misdemeanor."  Ariz. Rev. Stat. § 13-1002(A).  Thus, the Ninth Circuit's holding that a violation of that generic statute was not a violation of a law relating to a controlled substance, Coronado-Durazo v. INS, 123 F.3d 1322, 1326 (9th Cir. 1997), is equally distinguishable.

-9-

also targets other types of interstate travel does not disqualify it from service, in an appropriate case, as a law relating to controlled substances. Accord Johnson, 971 F.2d at 342.

The petitioner also tries to analogize his Travel Act conviction to a conviction for being an accessory after the fact. See, e.g., In re Batista-Hernandez, 21 I. & N. Dec. 955 (BIA 1997) (holding that the crime of being an accessory after the fact, 18 U.S.C. § 3, does not relate to an antecedent controlled substance offense because it "takes place subsequent to the completion of the underlying felony" and is not "punishable equally as the underlying substantive crime"). He argues that because the penalties for a Travel Act violation and a narcotics violation are so different,[5] a Travel Act violation cannot amount to a deportable offense. This course of ratiocination does not journey far.

In Batista-Hernandez, the BIA focused its analysis of the offense not merely on the penalties that it carried, but also "on the historical treatment of the crime in question." Id. at 959. The question there was to what extent the generic offense of accessory after the fact related to the underlying (drug-related) conduct. The BIA noted that the crime of accessory after the fact takes place after the completion of the principal crime, and, as

---

[5]A Travel Act violation carries with it a maximum penalty of five years' imprisonment. See 18 U.S.C. § 1952(a)(3)(A). A narcotics violation, however, can carry penalties of up to life imprisonment, depending upon drug type and quantity. See 21 U.S.C. § 841(b).

such, "does not aid in the commission of the [principal] offense." Id. at 960. This is a far cry from the petitioner's case, in which the Travel Act violation was part and parcel of his drug-trafficking activity. The fact that the penalties differ, without more, lacks the talismanic significance that the petitioner attaches to it.

Next, the petitioner insists that his Travel Act violation must be separate and distinct from his underlying activity because one can be prosecuted simultaneously for both a Travel Act infraction and for a specific drug-trafficking offense (say, possession with intent to distribute). Cf. United States v. Stafford, 831 F.2d 1479, 1481 (9th Cir. 1987) (a case in which the defendant pleaded guilty both to traveling interstate to commit bribery and to the underlying offense of bribery). That plaint misses the point. The issue here is not whether the Travel Act sometimes overlaps with other criminal statutes, but, rather, whether a Travel Act violation is, in particular circumstances, a violation of a law relating to a controlled substance. For purposes of this inquiry, the fact that the elements of different crimes may partially coincide is meaningless.

Finally, the petitioner strives to convince us that the BIA reads the relevant section of the INA too broadly. We are not persuaded. While adjudicators are bound in certain circumstances to interpret the Travel Act narrowly, see Rewis v. United States,

-11-

401 U.S. 808, 812-13 (1971); <u>United States</u> v. <u>Hathaway</u>, 534 F.2d 386, 398 (1st Cir. 1976), and to construe vague terms in favor of the alien, <u>Aybar-Alejo</u> v. <u>INS</u>, 230 F.3d 487, 489 (1st Cir. 2000), neither principle is apposite here. The question in this case is whether section 1227(a)(2)(B)(i) covers offenses such as the petitioner's Travel Act violation. That is a question of law, and the BIA answered it correctly.

For these reasons, we hold that the Travel Act is a law relating to controlled substances as long as there is a sufficiently close nexus between the violation and the furtherance of a drug-related enterprise. <u>See</u> <u>Johnson</u>, 971 F.2d at 342. Because such a nexus exists here, the petitioner's Travel Act violation amounted to a deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i).

The petitioner's remaining point goes to the BIA's determination that his Travel Act violation constituted a drug-trafficking crime, and, as such, an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). In the last analysis, this argument also depends on whether the Travel Act violation can be construed as relating to a controlled substance. Consequently, what we already have said controls here. Courts define "illicit trafficking" as illegally "trading, selling or dealing" in specified goods. <u>Kuhali</u> v. <u>Reno</u>, 266 F.3d 93, 107 (2d Cir. 2001). Carrying on a business enterprise that deals in narcotics is within this rubric. Thus,

the BIA correctly ruled that the petitioner's Travel Act violation constituted an aggravated felony. See 8 U.S.C. § 1101(a)(43)(B) (listing illicit trafficking in a controlled substance as an aggravated felony).

## III. CONCLUSION

We need go no further. For the reasons stated herein, the petitioner was appropriately held deportable under 8 U.S.C. §§ 1227(a)(2)(B)(i), 1227(a)(2)(A)(iii). Moreover, he was ineligible, as a matter of law, for discretionary relief. See id. § 1182(h). The petition for review must, therefore, be denied and dismissed.

**It is so ordered**.