**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| HARJIT SHANTA, AKA Harjit, AKA Harjit Kaur, AKA Sarabjit Kaur, AKA Shanta,<br><br>              Petitioner,<br><br>   v.<br><br>ERIC H. HOLDER, Jr., Attorney General,<br><br>              Respondent. | No. 08-72386<br><br>Agency No. A070-078-655<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 5, 2012[**]
San Francisco, California

Before: SILVERMAN, GOULD, and CHRISTEN, Circuit Judges.

   Harjit Shanta, also known as Harjit Kaur, (Shanta) a native and citizen of

India, petitions for review of the Board of Immigration Appeals' (BIA) termination

of her asylee status and rejection of her claims for withholding of removal and

_____

   [*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

   [**]   The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

relief under the Convention Against Torture (CAT). We deny her petition for review.

Shanta contends that substantial evidence did not support the Immigration Judge's (IJ) adverse credibility finding, which was relied upon by the BIA. This is a pre-REAL ID Act case, and the IJ properly provided "specific, cogent reasons to support his [adverse-credibility] determination" that went "to the heart of [Shanta's] claim." *Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007) (quoting *Desta v. Ashcroft*, 365 F.3d 741, 745 (9th Cir. 2004)). The IJ's adverse-credibility determination was justified based on inconsistencies in Shanta's testimony about her family that related to her story seeking asylum. At her initial hearing, Shanta claimed that her husband Sukhwinder had been repeatedly arrested and abused by Indian police at their home when those police came to look for her after she fled India. But she later admitted that her husband had been killed several years before she left India. She then explained that she was referring to her then-boyfriend, Harbans Singh Gill, whom she considered to be "just the image of [her] first husband." In the reopened proceedings, Gill testified (1) that he was arrested in India for his own political activities, (2) that he had never been at Shanta's house when police came to look for her, and 3) that Shanta suggested he adopt her husband's name of Sukhwinder to gain benefits under her asylum application.

2

This fraud was substantial evidence to support the IJ's credibility finding and went to the heart of Shanta's claim to have a well-founded fear of future persecution. Based on the same fraud, the BIA correctly terminated Shanta's asylee status because "the DHS established by a preponderance of evidence 'a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted.'" *See* 8 C.F.R. § 1208.24(a)(1)(2006). To the extent Shanta based her claims for withholding from removal and relief under CAT "on assertions and claims that were exhaustively considered by the court," the IJ did not err in denying those claims based on the same adverse credibility finding. *See Al-Harbi v. INS*, 242 F.3d 882, 888–89 (9th Cir. 2001); *Almaghzar v. Gonzales*, 457 F.3d 915, 922-23 (9th Cir.2006).

The IJ also did not err in holding that Shanta did not show that she is more likely than not to be persecuted or tortured upon returning to India as a result of her having sought asylum in the United States. The documentary evidence that Shanta supplied to support this claim indicated that asylum seekers returning to India "did not have problems" unless they had criminal convictions or were "high profile" cases. Shanta did not have criminal convictions and was not a "high profile" case. This was substantial evidence for the IJ to conclude that "it is not more likely than not that [Shanta] might be harmed upon her return to India[]."

3

Shanta also argues that the BIA erred in affirming the IJ's grant of the government's motion to reopen because the material supporting that motion "was immaterial, inherently unreliable and insufficient to support reopening." We disagree. The overseas report on which the IJ relied in granting the motion to reopen was material; it cast serious doubt on Shanta's claims about her family, her involvement with Sikh militants, and alleged police reprisals for that involvement. Hearsay in the report did not undermine its reliability. *See Gu v. Gonzales*, 454 F.3d 1014, 1021 (9th Cir. 2006) (citing *Baliza v. INS*, 709 F.2d 1231, 1233 (9th Cir. 1983)). Shanta's Asylee Relative Petition triggered the overseas investigation; the resulting report was unavailable and undiscoverable at the time of her asylum hearing, and reopening was proper. 8 C.F.R. § 1003.2(c)(1).

Because the BIA ruled that Shanta waived her opposition to reopening, she asks that we remand to the BIA under *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam). But the BIA addressed the issues on which Shanta objected, and the facts on which the appropriateness of reopening turn were before the IJ. The record is adequately developed as to the issues on which the BIA ruled, so remand under *Ventura* is not required. *See Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1133 (9th Cir. 2006) (en banc) (remand unnecessary where the record was unambiguous and the BIA had considered underlying issues).

Finally, Shanta contends that the BIA violated her due process rights by admitting the overseas investigation reports and giving her own documentary evidence little weight. We reject this due process challenge to the IJ's rulings on evidence. Hearsay in the overseas investigation reports did not make their admission error. *See Gu*, 454 F.3d at 1021. And when evidence that the investigator was indicted for fraud emerged, the government corroborated its first report with a second investigation. Shanta's evidence was admitted and the IJ and BIA gave proper reasons for giving it little weight. There was no due process problem with the IJ relying on the overseas investigation reports. The overseas investigations also did not violate the confidentiality provision of 8 C.F.R. § 1208.6 because § 1208.6 (c)(1)(v) provides an exception for disclosure in "[a]ny United States Government investigation concerning any criminal or civil matter . . . ." The IJ did not err in giving little weight to Shanta's submitted evidence because (1) it included affidavits from Shanta's family members that contradicted statements they previously made to investigators and (2) Shanta had "clearly previously presented falsified documents." These were "specific, cogent reasons" to give Shanta's evidence little weight. *Zahedi v. INS*, 222 F.3d 1157, 1165 (9th Cir. 2000).

In summary, Shanta has not provided any proper basis for relief from the agency action.

**DENIED**.