147 F.3d 1148
 42 Cont.Cas.Fed. (CCH) P 77,335, 98 Cal. Daily
Op. Serv. 5307,
98 Daily Journal D.A.R. 7457
SAMEENA INC., an Oregon corporation dba Samtech Research;
Sameena Ali; Mirza Ali, Plaintiffs-Appellants,
v.
UNITED STATES AIR FORCE; V. Carol Moore; Steve Bangs;
Alan Schoenberg; Maxwell Air Force Base; Pilson;
Mike Thomason, Defendants-Appellees.
 No. 97-15252.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 10, 1998.
Decided July 6, 1998.
 
 J. Christopher Hall, Oakland, CA, Joseph P. Russoniello, Ann M. Mooney, Cooley Godward LLP, San Francisco, CA, for plaintiffs-appellants.
 John N. Hemann, Assistant United States Attorney, San Francisco, CA, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; Fern M. Smith, District Judge, Presiding. D.C. No. CV-96-01889-FMS.
 Before: D.W. NELSON, BOOCHEVER, and REINHARDT, Circuit Judges.
 D.W. NELSON, Circuit Judge:
 
 
 1
 This case arises from a contractor's alleged attempts to defraud the government and the government's efforts to bar the contractor from bidding on future government projects. The appellants bring civil rights and common-law tort claims against a number of individual employees of the United States Air Force (the "Air Force") and argue that the Air Force's decision to debar them for a period of fifteen years was arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"), codified in pertinent part at 5 U.S.C. § 704. The district court dismissed the claims against the individual defendants and granted summary judgment in favor of the Air Force on the APA claims. We have jurisdiction pursuant to 28 U.S.C. § 1291. Although we affirm the dismissal of the claims against the individual defendants, we reverse the district court's summary judgment because we conclude that the Department of the Air Force (the "Air Force") violated the appellants' constitutional right to due process when it denied them an evidentiary hearing, as required by 48 C.F.R. § 9.406-3(b)(2).
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 In February 1992, the Social Security Administration ("SSA") solicited bids from computer suppliers for a quantity of microcomputer workstations. University Systems, Inc. ("USI"), a California-based corporation of which Appellant Mirza Ali was Chief Executive Officer, submitted a proposal to the SSA in April 1992. USI's bid was deemed competitive, and USI provided the SSA with samples of its products for further evaluation.
 
 
 3
 During this process, questions arose regarding whether a mouse device included in the proposal was manufactured in compliance with the Trade Agreements Act of 1979, 19 U.S.C. §§ 2501-2582. While this matter was being investigated, it was discovered that two USI officers had submitted a fraudulent letter to the SSA. The SSA consequently eliminated USI from consideration for the workstation contract.
 
 
 4
 Subsequently, the United States Department of Health and Human Services ("HHS"), of which the SSA is part, commenced "debarment" proceedings against USI and four of its officers, including Mirza Ali, seeking to disqualify them from submitting government contract proposals for three years. On February 2, 1994, USI, Mirza Ali, and the other USI officers were debarred from government contracting through February 18, 1996.
 
 
 5
 Mirza Ali's wife, Appellant Sameena Ali, is president and sole director of Appellant Sameena Inc. ("Sameena"), which was incorporated in February 1993 by Keith Griffen, a USI officer. Each of the appellants uses aliases: Sameena Ali sometimes goes by "Sameena Ikbal." Mirza Ali sometimes goes by "Zulfiqar Eqbal." Sameena Inc. operates under the assumed name "Samtech Research, Inc." ("Samtech").
 
 
 6
 Like USI, Samtech supplied computer workstations to government agencies. In June 1995, an Alabama-based contracting squadron of the Air Force issued a contract solicitation for laptop computers. An amendment to the solicitation indicated that the buyer was V. Carol Moore.
 
 
 7
 Samtech submitted a proposal to Moore in July 1995. Included in Samtech's proposal was a certification that neither Samtech nor any of its principals was debarred or proposed for debarment at that time. The certification defined "principals" as "officers; directors; owners; partners; and persons having primary management or supervisory responsibilities within a business entity." Because the Air Force solicitation required that bidders have at least three years of experience as a government contractor, Samtech's proposal also included a list of "Government Contract Awards." Among them was a contract with the United States Department of Energy (the "DoE contract") that Sameena had obtained in 1994 through a novation from USI.
 
 
 8
 In response to a query, Samtech sent Moore a letter in September 1995 explaining that Samtech "started doing business with the Federal Government by acquiring a contract for the supply of ADP equipment to the United States Department of Energy in 1992." On further investigation, Moore discovered that the contract actually had been awarded to USI in 1992 and had only been novated to Samtech in 1994. Moore also obtained bank documents indicating that "Sameena Ikbal" and "Zulfiqar Eqbal" were authorized to make withdrawals from Samtech's accounts and were, respectively, "President/Secretary" and "Vice President" of the corporation. This information appeared to Moore to contradict the statements made in Samtech's contract proposal.
 
 
 9
 On the basis of these apparent misrepresentations, Samtech was deemed ineligible for the Air Force contract. Moreover, in December 1995, the Air Force Contracting Officer, Gladys McBride, submitted a recommendation that Samtech be debarred. McBride appended the entire administrative file to her recommendation, including an affidavit by Moore describing her investigations.
 
 
 10
 On December 26, 1995, Sameena Inc., Samtech, Sameena Ali, and Mirza Ali ("the appellants") were notified that they had been proposed for debarment (and, in Mirza Ali's case, an "extension" of debarment). The notices were accompanied by memoranda setting forth the grounds for the proposed debarments. The notices also invited the appellants to submit information and argument in opposition to the debarment.
 
 
 11
 The appellants included in their response a letter dated February 21, 1996, from an official at Samtech's bank. The letter stated that the document indicating that Zulfiqar Eqbal was Vice President of Samtech--a bank signature card--had been "corrected" after the bank was informed "that Eqbal was not a corporate officer" of Sameena or Samtech. The submission also included copies of checks written on Sameena's bank accounts. A number of these checks were signed by "Zulfiqar Eqbal" and were made out to a variety of payees, including physicians, a sports club, and Eqbal (Mirza Ali) himself. The appellants' submission also requested an evidentiary hearing on the issue of Mirza Ali's role at Samtech. Notwithstanding the submission, and without an evidentiary hearing, the Air Force issued a final decision in June 1996 to debar Sameena/Samtech and Sameena Ali--and to extend Mirza Ali's debarment--until December 2010. The debarment was based on findings that the appellants had (1) made false statements regarding Samtech's experience as a contractor, (2) provided false certifications that none of Samtech's principals was debarred, and (3) participated in a scheme to avoid the effects of USI's debarment.
 
 
 12
 On August 30, 1996, the appellants filed two complaints in the United States District Court for the Northern District of California. The first complaint, brought by Mirza Ali against HHS and against six agency employees in their individual capacities, focused on Ali's initial debarment and sought declaratory relief and damages. The second complaint, brought by Mirza Ali, Sameena Ali, and Sameena/Samtech against the Air Force and seven Air Force employees in their individual capacities, focused both on the debarment of Sameena/Samtech and Sameena Ali and on the extension of Mirza Ali's debarment.
 
 
 13
 This second complaint made substantially the same allegations as the first, even though it was directed at entirely different defendants. The appellants alleged (1) that the individual Air Force officials had conspired to violate their civil rights and had committed several common-law torts and (2) that the Air Force's decision to debar them was arbitrary and capricious and should be set aside pursuant to the APA.
 
 
 14
 In an order filed December 11, 1996, the district court dismissed the claims against the individual defendants for lack of personal jurisdiction and, alternatively, on the grounds that the appellants had failed either to plead conspiracy with sufficient particularity or to comply with the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. The court also granted summary judgment to the Air Force on the APA claims. The appellants timely appeal. We affirm the district court's dismissal of the claims against the individual defendants but reverse the summary judgment in favor of the Air Force.
 
 STANDARD OF REVIEW
 
 15
 A dismissal with leave to amend is reviewed de novo. Dumas v. Kipp, 90 F.3d 386, 389 (9th Cir.1996). A grant of summary judgment is also reviewed de novo. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir.1997). The standards governing review of the district court's individual determinations are addressed below.
 
 ANALYSIS
 
 16
 I. The district court properly determined that the appellants failed adequately to plead conspiracy.
 
 
 17
 The district court determined that the appellants failed to "allege conspiracy with sufficient particularity." We agree. The appellants failed to allege facts to support their allegations that the individual defendants agreed illegally to debar them or that they agreed to discriminate against them because of their race. Accordingly, we affirm the district court's dismissal of the conspiracy count. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir.1988).[1]
 
 
 18
 II. The district court properly dismissed the tort claims against the individual defendants.
 
 
 19
 The district court dismissed the appellants' common law tort claims against the individual defendants on the ground that the appellants had failed to comply with the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. The district court did not err in this determination.
 
 
 20
 Pursuant to 28 U.S.C. § 2679(d), the United States was properly substituted for the individual defendants. United States Attorney Michael Yamaguchi certified that the federal employees named in the complaint were acting within the scope of their employment, see 28 U.S.C. § 2679(d)(1); 28 C.F.R. § 15.3, and the complaints did not present any evidence to the contrary. The appellants do not contest that the defendants' jobs required them to assess the integrity of government contractors and to recommend and effect debarment where appropriate. Thus, even if the defendants' debarment decisions were based upon improper motives, the debarment was plainly within the scope of the defendants' employment. See Wilson v. Drake, 87 F.3d 1073, 1076 (9th Cir.1996).
 
 
 21
 Given the United States' substitution, the appellants were required to present their tort claims to the appropriate federal agency before raising them in court. See 28 U.S.C. § 2675. There is no evidence in the administrative record that the appellants filed their tort claims with the Air Force. Accordingly, the district court correctly concluded that it lacked subject matter jurisdiction over the claims. See Meridian Int'l Logistics Inc. v. United States, 939 F.2d 740, 743 (9th Cir.1991).
 
 
 22
 III. The district court erred in granting the Air Force's motion for summary judgment.
 
 
 23
 The appellants argue that the decision to debar them was arbitrary and capricious. They appeal the district court's summary judgment in favor of the Air Force on three grounds: First, they argue that Carol Moore's declaration failed to establish that she had personal knowledge regarding the contract proposal at issue and should have been stricken from the administrative record. Second, they claim that, by the terms of the 1994 novation of the DoE contract, USI's previous two years of government contracting experience should have been "imputed" to Samtech. Finally, they contend that they had a due process right to an evidentiary hearing regarding Mirza Ali's role at Samtech. We address each of the appellants' claims in turn.
 
 
 24
 A. The district court properly rejected the appellants' request to strike Carol Moore's affidavit.
 
 
 25
 The appellants claim that the Moore affidavit should not have been admitted as evidence in the administrative proceedings against them. They point out that the affidavit does not indicate to which specific contract proposal it refers. On that basis, they argue that Moore failed to establish her personal knowledge of the facts contained in the affidavit and that the affidavit consequently was incompetent.
 
 
 26
 As the district court recognized, the appellants' position is wholly without merit. The affidavit contains information that clearly links it to the events in question. It refers in detail to Samtech's proposal (the appellants do not allege that they submitted more than one proposal to the Air Force), the debarment of USI and Mirza Ali, and Moore's personal investigations of the matter. Moreover, the facts in the affidavit comport with the administrative record, which includes documentation indicating that Moore was the contract specialist assigned to the proposal in question. Since the appellants do not allege any facts that call the reliability of the affidavit into question, we agree with the district court that its use as evidence in the administrative proceedings against the appellants was neither arbitrary nor capricious.
 
 
 27
 B. The 1994 novation did not "impute" to appellants USI's government contracting experience.
 
 
 28
 On February 13, 1994, following USI's debarment, USI, Sameena, and the DoE entered into a Novation Agreement, transferring USI's rights and obligations to Sameena. The agreement states, in pertinent part:
 
 
 29
 The government recognizes the Transferee [Sameena] as the Transferor's [USI's] successor in interest in and to the contract. The Transferee by this Agreement becomes entitled to all rights, titles, and interests of the Transferor in and to the contract as if the Transferee were the original party to the contract.
 
 
 30
 The appellants claim that the terms of this Agreement led them "reasonably" to believe that, because they would be treated as the "original party" to the contract, the Novation "imputed the DoE contract experience entirely to Samtech." As the district court noted, however, this claim is directly belied by the appellants' earlier representations in their submission in response to the proposed debarment, in which they contended that their overstatement of government contracting experience had resulted from an "innocent" error about the date of the contract. In light of this inconsistency, the Air Force did not act arbitrarily or capriciously in refusing to attach any credibility to this claim.
 
 
 31
 C. The appellants were entitled to an evidentiary hearing.
 
 
 32
 The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. See Vitarelli v. Seaton, 359 U.S. 535, 545, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 372, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Accardi v. Shaughnessy, 347 U.S. 260, 267, 74 S.Ct. 499, 98 L.Ed. 681 (1954). An agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice" and consequently may result in a violation of an individual's constitutional right to due process. NLRB v. Welcome-American Fertilizer Co., 443 F.2d 19, 20 (9th Cir.1971); see also United States v. Newell, 578 F.2d 827, 834 (9th Cir.1978). Where a prescribed procedure is intended to protect the interests of a party before the agency, "even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed." Vitarelli, 359 U.S. at 547, 79 S.Ct. 968 (Frankfurter, J., concurring); see also Note, Violations by Agencies of Their Own Regulations, 87 Harv. L.Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts).
 
 
 33
 The Federal Acquisition Regulation ("FAR") establishes a system of uniform policies and procedures governing acquisitions by all executive agencies. See 48 C.F.R. § 1.101. In recognition of the "serious nature of debarment," see 48 C.F.R. § 9.402, the FAR sets out detailed procedures to ensure that this sanction, which is intended to safeguard the integrity of the acquisitions process, itself is applied in conformity with "principles of fundamental fairness." 48 C.F.R. § 9.406-3(b). Accordingly, the FAR provides:
 
 
 34
 [I]f it is found that the contractor's submission in opposition raises a genuine dispute over facts material to the proposed debarment, agencies shall also--(i) Afford the contractor an opportunity to appear with counsel, submit documentary evidence, and confront any person the agency presents.
 
 
 35
 48 C.F.R. § 9.406-3(b)(2). Thus, in the event of a genuine factual dispute, the FAR clearly establishes that a contractor facing debarment is entitled to an evidentiary hearing.
 
 
 36
 The appellants claim that they raised a genuine issue of material fact with regard to Mirza Ali's position at Sameena/Samtech. They contend that Ali was mistakenly listed as Vice President of the company on the bank signature card discovered by Moore and that the February 1996 letter from the bank supports that contention. Accordingly, they claim that they were entitled under the FAR to an evidentiary hearing on the matter.
 
 
 37
 The district court rejected the appellants' claims on two grounds. First, the court found the letter from the bank to be inconclusive. The court pointed out that the letter merely acknowledged that the bank had issued a new signature card deleting Eqbal's name, and that it had made this "correction" after being informed that Zulfiqar Eqbal was not a corporate officer. The district court suggested that the letter had little probative value because it was sent after debarment proceedings against the appellants already had commenced.
 
 
 38
 Second, the district court observed that the operative factual question informing the debarment decision was not whether Ali/Eqbal was Vice President of Sameena/Samtech but, rather, whether he exercised control over the business. As the court noted, the Debarring Official found that Ali had written business-related and personal checks on Samtech's account and had stated on the telephone that he was project manager for government solicitations. Based on that evidence, the Debarring Official concluded, "[I]t is clear that Mr. Eqbal had full authority to expend Samtech's resources and bind the company." Because the district court found that "[n]othing plaintiffs submitted created a dispute as to this issue," it concluded that they were not entitled to an evidentiary hearing.
 
 
 39
 The district court failed, however, to acknowledge evidence submitted by the appellants that calls into question whether Ali/Eqbal was a principal of Sameena/Samtech. The appellants submitted evidence that Ali/Eqbal was Vice President of a Hong Kong corporation also called Samtech and that his position there had likely caused the confusion involving the signature cards. The appellants also submitted evidence indicating that Ali/Eqbal held no official position with Sameena/Samtech other than bookkeeper and that the writing of checks was consistent with that position. The appellants denied that Ali/Eqbal had represented himself to be a project manager or any other type of corporate officer. They explained that the checks made out to and signed by Eqbal were not for his personal use and were not issued at his discretion. Finally, the appellants challenged the government to produce any document indicating that Ali/Eqbal had actually acted in the capacity of a principal with regard to control over the company's decisionmaking process. Thus, although the appellants' submission does not establish that the Debarring Official acted arbitrarily or capriciously in determining that Ali/Eqbal was a principal of Samtech/Sameena, it does raise a genuine factual dispute regarding the issue.
 
 
 40
 The appellants requested an evidentiary hearing to address this question. The Debarring Official decided, however, that a hearing was unwarranted, finding the appellants' denials of the charges against them to be "unsupported by credible evidence." We do not doubt that the Air Force is in a better position than this Court to assess the credibility of the evidence offered by the appellants. We are convinced, however, that an evidentiary hearing would have been the appropriate forum in which to make such an assessment, particularly in view of the serious consequences attaching to a debarment of 15 years. The FAR states unambiguously that such a hearing "shall" be afforded if genuine factual disputes arise. Accordingly, we conclude that the Air Force violated the appellants' constitutional right to due process in failing to comply with binding regulations and that the appellants are entitled to such a hearing on remand. As Justice Frankfurter observed in a similar context, "He that takes the procedural sword shall perish with that sword." Vitarelli, 359 U.S. at 547, 79 S.Ct. 968 (Frankfurter, J., concurring).
 
 CONCLUSION
 
 41
 For the foregoing reasons, we AFFIRM the district court's dismissal of the appellants' claims against the individual defendants. However, we REVERSE the summary judgment in favor of the Air Force and REMAND to the district court with instructions to remand this matter to the Air Force. The Air Force should hold an evidentiary hearing, pursuant to 48 C.F.R. § 9.406-3(b)(2), to address whether Mirza Ali/Zulfiqar Eqbal was a principal of Sameena/Samtech.
 
 
 42
 AFFIRMED in part, REVERSED in part and REMANDED. Each party shall bear its own costs.
 
 
 
 [1]
 Because we affirm the district court's dismissal of the conspiracy claims against the individual defendants, we need not decide whether the district court had personal jurisdiction over the individual defendants. See Lee v. Beaumont, 12 F.3d 933, 937 (9th Cir.1993) ("A court may assume the existence of personal jurisdiction and adjudicate the merits in favor of the defendant without making a definitive ruling on jurisdiction."). We also need not reach the appellants' claim that the district court erred in staying discovery regarding the personal jurisdiction issue